Marc J. Randazza, Esq.,
Arizona Bar No. 027861
Randazza Legal Group
10620 Southern Highlands Pkwy, Ste 110-454
Las Vegas, NV 89141
888-667-1113
305-437-7662 (fax)
MJR@randazza.com

Attorney for Plaintiff,
LIBERTY MEDIA HOLDINGS, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Liberty Media Holdings, LLC | Case No. 11-CV-0280-PHX-LOA |
| Plaintiff, | **Plaintiff's Proposed Findings of Fact and Conclusions of Law in Support of Application for Entry of Default Judgment** |
| vs. | |
| Vinigay.com; Gustavo Paladeski; Vinicius Alves | Hearing Date: July 8, 2011<br>Hearing Time: 2:00 p.m.<br>Judge: Hon. Lawrence O. Anderson |
| Defendants. | |

Plaintiff respectfully submits these proposed findings of fact and conclusions of law as requested by the Court (ECF No. 23).

## I. FINDINGS OF FACT

1.     Vinigay.com is owned and operated by Gustavo Paladeski and Vinicius Alves, foreign individuals.  ECF 6 ¶ 2, ECF 1-2, ECF 6 ¶ 21, and ECF 6-1.

2.     Plaintiff Liberty produces, markets, and distributes adult-oriented audiovisual works under the registered marks CORBIN FISHER®, and CORBIN FISHER'S AMATEUR COLLEGE SEX®, including photographs, books, DVDs, and through the operation of a website.   At this website, individuals purchase monthly subscriptions to view Plaintiff's photographic works and audiovisual content. ECF 6 ¶ 11.

3.      Plaintiff charges $39.95 for a one-time, non-recurring, one-month membership o
its website.  ECF 24-2 ¶ 9.  See also ECF 24-11.

4.      Prior to releasing its works into the market on the Internet or in DVD format,
Plaintiff Liberty marks each work with a copyright notice sufficient to place anyone viewing the
material that it is copyrighted.  Plaintiff Liberty's labels reflect its true business address and a
statement that it maintains age authentication records at that address, as required by 18 U.S.C.
§2257.  ECF 6 ¶ 45.

5.      By registering and operating the vinigay.com website, searching out the Plaintiff's
copyrighted works, and uploading these works to their own website for profit, Defendants
willfully and intentionally reproduced and distributed three Plaintiff-owned works through
www.vinigay.com.  ECF 6 ¶ 3 and ¶ 4.

6.      Vinigay.com is a website that provides adult-themed audiovisual content to the
public. ECF 6 ¶ 24.  The sole type of works available on the website appear to be copyrighted
videos.  ECF 6 ¶ 24.  These videos are stolen from a number of adult entertainment companies,
including Plaintiff. ECF 6 ¶ 24.  The site is free to join and view videos, and posts links to
megaporn.com where paying members of megaporn.com may download the videos as well.
Megaporn sells monthly subscriptions for roughly $11.23 per month or $112.45 per year. ECF 6
¶ 24, and ECF No. 1-3.  Should someone sign up for a membership at Megaporn after being
referred by Vinigay.com, Vinigay.com receives a commission. ECF 6 ¶ 24 and ECF No. 1-4.

7.      Additionally, Vinigay's business model depends on ad generated income and
profits.  In addition to the usual sort of web banners and pop up advertisements that appear on
Vinigay.com, each free video is embedded with an ad at the beginning of the copyrighted content
as well. ECF 6 ¶ 25 and ECF No. 1-5.

8.      Vinigay.com earns revenue through commissions on premium memberships by
referring users to megaporn.com as well as advertisements.  Vinigay.com is able to generate
Internet traffic based on the number and quality of videos available on its website and is able to
sell ad space based on its site's daily hits and number of users, which in turn is influenced by the
number of new videos uploaded as well as their quality and desirability.  ECF 6 ¶ 36.

9.      Plaintiff Liberty discovered 3 copies of its copyrighted material illegally shared on Defendant's website.  See ECF 24-9.  See also ECF 6 ¶ 29 and ¶ 40.

10.     Each of these works was registered with the United States Copyright Office prior to defendants' infringement.  ECF 24-2 ¶ 2-3, See also ECF 24-10.

11.     Vinigay.com did not have a registered DMCA Agent, and therefore does not qualify for the DMCA safe harbor providions.  ECF 6 ¶ 30.

12.     Defendants did not have authorization to duplicate or distribute the Plaintiff's works.  ECF No. 24-2 ¶ 7.

13.     Plaintiff's work "Cody Fucks Lucas" received 10,137 views on the vinigay.com website and "Cain Fucks Travis" received 14,655 views on the vinigay.com website.  ECF 24-9.

14.     Paladeski and Alves registered the domain name, Vinigay.com, with Wild West Domains—a domain name registrar located in Arizona.  See ECF 1-2, 24-4 and 24-5.

15.     Paladeski and Alves, therefore, consented to jurisdiction in Arizona by virtue of signing the Wild West Domains registration agreement and consenting to its Terms of Use (hereinafter "TOU").  Specifically, Sections 1, 4, 5, and 10 of the TOU prohibit the copyright infringing conduct engaged in by Defendants.  As such Defendants' conduct was a violation of the TOU.  See ECF 24-6.

16.     By agreeing to Section 19 of the TOU, Defendants explicitly agreed that "any action relating to or arising out of these Terms of Use shall be brought in the state or federal courts of Maricopa County, Arizona, and you hereby consent to the state and federal courts of Maricopa County, Arizona."  See ECF 24-6.

17.     In addition, the act of registering the Vinigay.com domain name in Arizona makes the Vinigay.com domain name and its operator subject to jurisdiction in Arizona.

18.     Additionally, as foreign defendants (both are residents of Brazil (See ECF No. 1-2, ECF. No. 7-1 ¶ 2)), Vinigay and Paladeski are subject to jurisdiction in any district.  See 28 U.S.C. 1391 ("An alien may be sued in any district.").  See also Fed. R. Civ. P. 4(k)(2).

19.     Both Brazil and the United States are signatories of the Universal Copyright Convention and the Berne Convention for protection of copyrights.  ECF 24-1 ¶ 5.

20.     Service of process was made on Defendants via email pursuant to this court's Order (ECF No. 10).  See ECF 15, 16, and 17.  See also ECF 24-1 ¶ 8-10.

21.     The Defendants are neither incompetent persons nor minors.  ECF 24-1 ¶ 11-12.

22.     Defendants received notice of the suit as confirmed by their contact with Plaintiff's attorney.  ECF. No 7-4 and 24-7.

23.     Defendants failed to answer or otherwise respond to the complaint filed against them, and Default was entered against defendants on April 18, 2011.  ECF No. 20-2 ¶¶ 3-5, ECF 22.

24.     Had each person who viewed only two of the three works, "Cody Fucks Lucas" and "Cain Fucks Travis," purchased a one-time, non-recurring membership to corbinfisher.com, Liberty would have earned $990,440.40.   ECF 24-3 ¶ 4.   This number does not include the number of people who viewed the third work as that number is unknown.

25.     Online piracy, including the free distribution of Liberty's works by tube sites such as vinigay.com, is one of the greatest threats to Plaintiff's continued profitability.  ECF 24-2 ¶ 8.

## II.  CONCLUSIONS OF LAW

### A. Plaintiff Effected Service of Process on Defendants Pursuant to Fed. R. Civ. P. 4(h)

26.     Service on defendants was made pursuant to the express provisions of the Fed. R. Civ. P. 4(f)(3), (4)(h)(2) and 4(m).

### B. The facts of the Record Show That a Default Judgment is Warranted

27.     A Court Order entering default judgment against Defendants is now proper pursuant to Fed. R. Civ. P. 55.

### C.  The Specific Relief Sought by Plaintiff Is Factually Supported and Authorized by Law

#### 1. Defendants Pirated Plaintiff's Works for Commercial Gain

28.      "To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) the ownership of a valid copyright and (2) infringement of the copyright by the defendant."  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.2d 101, 108-109 (2d Cir. 2001); *Hamil America, Inc. GFL*, 193 F.3d 92 (2d Cir. 1999).

29.     Liberty has shown that it owns the copyright in the three works at issue by providing the copyright registration certificates, and Liberty has shown that defendants directly infringed upon them by duplicating and distributing exact copies of these works.  ECF 24-9 and 24-10.

**2. Statutory Damages Are Authorized**

30.     The Copyright Act provides for a plaintiff to recover, at its election, either (1) its actual damages and (to the extent not redundant) defendant's profits attributable to infringement, or (2) statutory damages.

31.     If the works were registered with the U.S. Copyright Office prior to the commencement of the infringing activity, the copyright holder may elect statutory damages in the amount of $750.00 to $30,000.00 per work, increased to $150,000.00 in cases (such as this one) of willful infringement.  17 U.S.C. § 504(c).

32.     Plaintiff registered the Works prior to the commencement of the infringing activity.

33.     Because actual damages are often hard to prove, statutory damages have been authorized to make such proof unnecessary.  *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991).  Where timely registered works are infringed, as occurred here, the Copyright Act authorizes statutory damages.  17 U.S.C. §504(c).  Where, as here, infringement is "willful," the amount may be as high as $150,000 for each infringed work.  *Id.*  Congress increased the maximum from $100,00 to $150,000 because it found large awards to be necessary and desirable to deter the great temptation to infringement posed by modern computer technology.  H.R. Rep. No. 106-216 (1999), pp.6-7.  The critical purpose of deterring similar misconduct permits a maximum per work award for willful infringement, even where the infringement caused little to no damage.  *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496-97 (4th Cir. 1996) (collecting authority and sustaining maximum awards despite no proof of actual damages); *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 234 (1952) (for willful infringement a maximum award is permissible "even for uninjurious and unprofitable invasions").

### 3.  The Infringing Acts Harmed the Value of Liberty's Works

34.    In *Perfect 10, Inc. v. Talisman Communs., Inc.*, 2000 U.S. Dist. LEXIS 4564 (C. D. Cal. Mar. 27, 2000), plaintiff magazine publisher sued a website for publishing its photographs on the Internet.   Evaluating damages the Court wrote, "While it would be difficult to quantify Perfect 10's damages resulting from the infringement, it is clear that Perfect 10 has been severely damaged.   The photographs have been distributed worldwide, in a form that is easy to download and easy to copy.   A virtually unlimited number of copies can be made of the copyrighted photographs, as a result of [defendant's] infringement."  *Perfect 10, Inc*., 2000 U.S. Dist. LEXIS 4564 at 11.   The Court went on to award the maximum statutory award for willful infringement ($100,000 per work at the time) for each infringed photograph.   This $100,000 per photograph certainly demonstrates a legal basis for Liberty claiming that much per film (if not more).

35.    "When digital works are distributed via the internet, as in this case, every downloader who receives one of the copyrighted works from Defendant[s] is in turn capable of also transmitting perfect copies of the works.   Accordingly, the process is potentially exponential rather than linear, threatening virtually unstoppable infringement of the copyright."  *Elektra Entm't Group, Inc. v. Bryant*, 2004 U.S. Dist. LEXIS 26700 (C.D. Cal. Feb. 13, 2004), citing *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1013-1014 (9th Cir. 2001).

### 4.  The Facts and Law Support A Maximum Statutory Award

36.    The Defendant's illegal actions were not a momentary lapse, but a sustained commercial enterprise.   To deter others from yielding to the same temptation, a large award is appropriate.  *Yurman*, 262 F.3d at 113-114.

37.    Defendants willfully infringed on at least three of Liberty's works.   Without the benefit of discovery, it is unknown how many other works Defendants may have unlawfully copied and distributed.

38.    On a motion for default judgment, a district court awarded a maximum statutory award of $150,000 each for infringements of *The Last Samurai* and *Mystic River*, when a member of the Academy of Motion Picture Arts and Sciences who had been provided with a

1   screener copy of the movies allowed the movies to be duplicated and distributed via the Internet.

2   *Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004).   Similarly, in

3   *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.* (259 F.3d 1186 (9th Cir.

4   2001)(cert denied, 534 U.S. 1127 (2002)), the Ninth Circuit affirmed an award of approximately

5   $72,000 per infringement of several half-hour television shows.

6        39.    A federal court awarded $5,000 per erotic photograph (*Playboy v. Webbworld*,

7   968 F. Supp. 1171, 1176 (E.D. Tex. 1997)) and where infringement was found to be willful a

8   court awarded $100,000 (the maximum award at the time) per adult photograph.  *Perfect 10,*

9   *Inc.*, 2000 U.S. Dist. LEXIS 4564 at 11.

10       40.    Statutory damages serve both compensatory and punitive purposes, and thus may

11  be appropriate "whether or not there is adequate evidence of the actual damages suffered by

12  plaintiff or of the profits reaped by defendant" in order to effectuate the statutory policy of

13  discouraging infringement.  *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d

14  987, 996 (9th Cir. 1998).

15  **5.  Increased Damages for Willfulness**

16       41.    "In a case where the copyright owner sustains the burden of proving, and the

17  court finds, that infringement was committed willfully, the court in its discretion may increase

18  the award of statutory damages to a sum of not more than $150,000."  17 U.S.C. § 504(c)(2).

19  Defendants knew or should that known that their acts constituted copyright infringement.  They

20  knew that they did not have Liberty's permission to reproduce and distribute the Works for their

21  own commercial gain and could only remain unaware of the infringing nature of their actions by

22  engaging in willful blindness.

23       42.    The "statutory rule, formulated after long experience, not merely compels

24  restitution of profit and reparation for injury but also is designed to discourage wrongful

25  conduct."  *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 97 L. Ed. 276, 73

26  S.Ct. 222 (1952).

27       43.    It is appropriate that the Court use opportunities such as this to send a message of

28  deterrence to would be infringers that, "it costs less to obey the copyright laws than to disobey

1  them." *International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (D.N. Ill. 1987),

2  affirmed 855 F. 2d 375 (N.D. Ill. 1987).  The District Court in *Korwin* held that, "[t]o determine

3  the amount of statutory damages the court should primarily focus upon two factors:  the

4  willfulness of the defendant's conduct, and the deterrent value of the sanction imposed," pointing

5  out that "courts have repeatedly emphasized that defendants must not be able to sneer in the face

6  of copyright owners and copyright laws." *Id*.  See also, *Hickory Grove Music v. Andrews*, 749 F.

7  Supp. 1001, 1003 (D. Mont. 1990); *Van Halen Music v. Foos*, 728 F. Supp. 1495 (D. Mont.

8  1989).

9       44.    Therefore, it is proper to award maximum damages for the intentional

10  infringement of Liberty's copyrighted motion pictures.

11       45.    At the maximum of $150,000 per work for three works, statutory damages of

12  $450,000 are appropriate.

13       **7.  Liberty Is Entitled to Injunctive Relief and Attorney's Fees**

14       46.    17 U.S.C. § 502(a) makes express that the Court may issue "final injunctions on

15  such terms as it may deem just to prevent or restrain infringement of a copyright."  Thus, such

16  relief is authorized here by Defendants' conduct.

17       47.    17 U.S.C. § 505 provides that the Court may "award a reasonable attorney's fee to

18  the prevailing party as part of the costs." See also, *Warner Bros. Ent, Inc. v. Duhy*, 2009 U.S.

19  Dist. LEXIS 123332, 8-9 (C.D. Cal. Nov. 30, 2009), citing *Kepner-Tregoe, Inc. v. Vroom*, 186

20  F.3d 283, 289 (2d Cir. 1999) (finding a district court's award of attorneys' fees under Section 505

21  to be "justified based on the court's finding of willfulness and [ ] in line with the statutory goal of

22  deterrence")

23  **E.  Discussion of *Eitel Factors***

24       48.    The Court, in considering whether to grant a Motion for Default Judgment, may

25  consider the following factors: (1) the possibility of prejudice to the Plaintiff; (2) the merits of

26  Plaintiff's substantive claim; (3) the sufficiency of the Complaint; (4) the sum of money at stake

27  in the action; (5) the possibility of a dispute concerning material facts; (6) whether default was

28  due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil

Proposed Findings of Fact and Conclusions of Law in Support of Application for Entry of Default Judgment

1  Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir.

2  1986).  As illustrated below, all seven of these factors favor the entry of a default judgment.

3  ///

4      **1.  Possibility of Prejudice to Plaintiff**

5      49.    Liberty will be prejudiced if default judgment is not entered.  Liberty served

6  process on Defendants pursuant to the Fed. R. Civ. P. and pursuant to this court's order.  ECF

7  No. 15, 16, and 17.  No Defendant has cared to appear in this action.  If Plaintiff's Application

8  for Default Judgment is not granted, it "will likely be without recourse for recovery."  *PepsiCo,*

9  *Inc. v. Cal. Security Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002).

10      50.    Moreover, due to the fact that Plaintiff has stated a valid copyright claim, Plaintiff

11  "undeniably would be prejudiced absent an entry of permanent injunctive relief [by] default

12  judgment." *PepsiCo, Inc. v. Distribuidora La Matagalpa*, *Inc.*, 510 F. Supp.2d 1110, 1116 (S.D.

13  Fla. 2007). As such, Plaintiff will be sufficiently prejudiced to warrant the entry of default

14  judgment.

15      51.    Additionally, absent a default judgment awarding damages and enjoining

16  Defendants from engaging in similar behavior, there would be little from stopping these

17  Defendants (and many other persons with similar inclinations around the world) from merely

18  engaging in this behavior again.

19      **2.  The Merits of Liberty's Substantive Claim and the Sufficiency of the Complaint**

20      52.    Factors two and three of the *Eitel* test require an analysis of Plaintiff's claims and

21  the sufficiency of the Complaint. Plaintiff has asserted a prima facie claim for copyright

22  infringement.  Specifically, Plaintiff has alleged that a) it owns and has registered the copyright

23  in the Works and b) the Defendants made unauthorized reproductions of those works and

24  distributed them without Plaintiff's authorization.  These allegations state a claim for copyright

25  infringement.

26  //

27  //

28  ///

**3.  The Amount of Money At Stake**

53.     As shown in ECF No. 24-1 ¶ 75, actual damages of nearly $1,000,000 or statutory damages of $450,000 are appropriate for (at a statutory maximum of $150,000 per infringement) for Defendants' willful infringement.

**4.  The Remaining Factors**

54.     Factors five, six, and seven have also been satisfied.  There can be little dispute as to the material facts.  Plaintiff documented three of its copyrighted works on the Defendants' website, vinigay.com.  Plaintiff has demonstrated that it owns the copyrights for these works, and that registration occurred before the infringing activity.  Defendants came forward in an email to Plaintiff's attorney and admitted that they are the responsible party.  There is no evidence that there is a dispute concerning material facts or that default was due to excusable neglect.  Defendants had an opportunity to challenge the amended Complaint, and the entry of default, but rather they chose to ignore the action entirely.

55.     With regard to factor seven, although "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Cal. Security Cans*, 238 F.Supp. at 1777.  Moreover, Defendants' failure to answer or otherwise respond to the Complaint "makes a decision on the merits impractical, if not impossible." *Id.*

### III.  Conclusion

56.     For the above reason, Liberty requests that the Court enter Judgment for

    a.   Damages of either i) $990,440.40 actual damages or ii) $450,000 in statutory damages;

    b.   Award reasonable attorneys fees and costs;

    c.   Issue injunctive relief as requested;

Date: June 23, 2011.

    s/ Marc Randazza
    Marc Randazza, Arizona Bar No. 027861
    Randazza Legal Group
    10620 Southern Highlands Pkwy, # 110-454
    Las Vegas, NV 89141
    888-667-1113, 305-437-7662 (fax)
    MJR@randazza.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed using this Court's CM/ECF system on June 23, 2011.  Service was made on Defendants by email pursuant to the Court's Order (ECF No. 10).

Dated: June 23, 2011                              Respectfully submitted,

s/ Marc Randazza
Marc J. Randazza, SBN 269535
Randazza Legal Group
10620 Southern Highlands Pkwy, Ste 110-454
Las Vegas, NV 89141
888-667-1113
305-437-7662 (fax)
mjr@randazza.com