**Cover Sheet**

*Liberty Media Holdings v. Vinigay.com, et al.*

Case No. 11-CV-0280-PHX-LOA

**LODGED: PROPOSED ORDER ATTACHED**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Liberty Media Holdings, LLC<br><br>        Plaintiff,<br><br>    vs.<br><br>Vinigay.com; Gustavo Paladeski; Vinicius Alves<br><br>        Defendants. | Case No. 11-CV-0280-PHX-LOA<br><br>**Plaintiff's Proposed Order Granting Application for Entry of Default Judgment** |

This matter, having come before the Court on July 8, 2011, for oral argument, and the court having considered arguments, testimony, evidence, and other filings on record hereby finds:

**I. FINDINGS OF FACT**

1. Vinigay.com is owned and operated by Gustavo Paladeski and Vinicius Alves, foreign individuals. Doc. 6 ¶ 2, Doc. 1-2, Doc. 6 ¶ 21, and Doc. 6-1.

2. Plaintiff Liberty produces, markets, and distributes adult-oriented audiovisual works under the registered marks CORBIN FISHER®, and CORBIN FISHER'S AMATEUR COLLEGE SEX®, including photographs, books, DVDs, and through the operation of a website. At this website, individuals purchase monthly subscriptions to view Plaintiff's photographic works and audiovisual content. Doc. 6 ¶ 11.

3. Plaintiff charges $39.95 for a one-time, non-recurring, one-month membership o its website. Doc. 24-2 ¶ 9. See also Doc. 24-11.

4. Prior to releasing its works into the market on the Internet or in DVD format, Plaintiff Liberty marks each work with a copyright notice sufficient to place anyone viewing the material that it is copyrighted. Plaintiff Liberty's labels reflect its true business address and a statement that it maintains age authentication records at that address, as required by 18 U.S.C. §2257. Doc. 6 ¶ 45.

5. By registering and operating the vinigay.com website, searching out the Plaintiff's copyrighted works, and uploading these works to their own website for profit, Defendants willfully and intentionally reproduced and distributed three Plaintiff-owned works through www.vinigay.com. Doc. 6 ¶ 3 and ¶ 4.

6. Vinigay.com is a website that provides adult-themed audiovisual content to the public. Doc. 6 ¶ 24. The sole type of works available on the website appear to be copyrighted videos. Doc. 6 ¶ 24. These videos are stolen from a number of adult entertainment companies, including Plaintiff. Doc. 6 ¶ 24. The site is free to join and view videos, and posts links to megaporn.com where paying members of megaporn.com may download the videos as well. Megaporn sells monthly subscriptions for roughly $11.23 per month or $112.45 per year. Doc. 6 ¶ 24, and Doc. 1-3. Should someone sign up for a membership at Megaporn after being referred by Vinigay.com, Vinigay.com receives a commission. Doc. 6 ¶ 24 and Doc. 1-4.

7. Additionally, Vinigay's business model depends on ad generated income and profits. In addition to the usual sort of web banners and pop up advertisements that appear on Vinigay.com, each free video is embedded with an ad at the beginning of the copyrighted content as well. Doc. 6 ¶ 25 and Doc. 1-5.

8. Vinigay.com earns revenue through commissions on premium memberships by referring users to megaporn.com as well as advertisements. Vinigay.com is able to generate Internet traffic based on the number and quality of videos available on its website and is able to sell ad space based on its site's daily hits and number of users, which in turn is influenced by the number of new videos uploaded as well as their quality and desirability. Doc. 6 ¶ 36.

9. Plaintiff Liberty discovered 3 copies of its copyrighted material illegally shared on Defendant's website. See Doc. 24-9. See also Doc. 6 ¶ 29 and ¶ 40.

10. Each of these works was registered with the United States Copyright Office prior to defendants' infringement. Doc. 24-2 ¶ 2-3, See also Doc. 24-10.

11. Vinigay.com did not have a registered DMCA Agent, and therefore does not qualify for the DMCA safe harbor providions. Doc. 6 ¶ 30.

12. Defendants did not have authorization to duplicate or distribute the Plaintiff's works. Doc. No. 24-2 ¶ 7.

13. Plaintiff's work "Cody Fucks Lucas" received 10,137 views on the vinigay.com website and "Cain Fucks Travis" received 14,655 views on the vinigay.com website. Doc. 24-9.

14. the Plaintiff's rights under 17 U.S.C. § 106 were violated inside the United States. (Docs. 24-2 ¶ 6, 24-3 ¶ 2)  The Defendants illegally duplicated the Plaintiff's works in the United States. *Id.*  They distributed them from U.S. servers. (Doc. 24-5)  Then they distributed them to Americans.

15. Paladeski and Alves registered the domain name, Vinigay.com, with Wild West Domains—a domain name registrar located in Arizona. See Doc. 1-2, 24-4 and 24-5.

16. Paladeski and Alves, therefore, consented to jurisdiction in Arizona by virtue of signing the Wild West Domains registration agreement and consenting to its Terms of Use (hereinafter "TOU").  Specifically, Sections 1, 4, 5, and 10 of the TOU prohibit the copyright infringing conduct engaged in by Defendants.  As such Defendants' conduct was a violation of the TOU. See Doc. 24-6.

17. By agreeing to Section 19 of the TOU, Defendants explicitly agreed that "any action relating to or arising out of these Terms of Use shall be brought in the state or federal courts of Maricopa County, Arizona, and you hereby consent to the state and federal courts of Maricopa County, Arizona." See Doc. 24-6.

18.  In addition, the act of registering the Vinigay.com domain name in Arizona makes the Vinigay.com domain name and its operator subject to jurisdiction in Arizona.

19. Additionally, as foreign defendants (both are residents of Brazil (See Doc. 1-2, Doc. 7-1 ¶ 2)), Vinigay and Paladeski are subject to jurisdiction in any district. See 28 U.S.C. 1391 ("An alien may be sued in any district."). See also Fed. R. Civ. P. 4(k)(2).

20. Both Brazil and the United States are signatories of the Universal Copyright Convention and the Berne Convention. Doc. 24-1 ¶ 5.

21. Service of process was made on Defendants via email pursuant to this court's Order (Doc. No. 10). See Doc. 15, 16, and 17. See also Doc. 24-1 ¶ 8-10.

22. The Defendants are neither incompetent persons nor minors. Doc. 24-1 ¶ 11-12.

23. Defendants received notice of the suit as confirmed by their contact with Plaintiff's attorney. Doc. 7-4 and 24-7

24. Defendants failed to answer or otherwise respond to the complaint filed against them, and Default was entered against defendants on April 18, 2011. Doc. 20-2 ¶¶ 3-5, Doc. 22.

25. Had each person who viewed only two of the three works, "Cody Fucks Lucas" and "Cain Fucks Travis," purchased a one-time, non-recurring membership to corbinfisher.com, Liberty would have earned $990,440.40. Doc. 24-3 ¶ 4. This number does not include the number of people who viewed the third work as that number is unknown.

26. While the Defendants are presumably in Brazil, at least some of the infringing acts took place inside the United States. The Plaintiffs employees discovered the infringments on the Vinigay.com website while in the United States. Doc. 24-9, Doc. 6 ¶ 29 and ¶ 40.

## II.  CONCLUSIONS OF LAW

**A. Plaintiff Effected Service of Process on Defendants Pursuant to Fed. R. Civ. P. 4(h)**

27. Service on defendants was made pursuant to the express provisions of the Fed. R. Civ. P. 4(f)(3), (4)(h)(2) and 4(m).

**B. The facts of the Record Show That a Default Judgment is Warranted**

28. A Court Order entering default judgment against Defendants is now proper pursuant to Fed. R. Civ. P. 55.

**C.  The Specific Relief Sought by Plaintiff Is Factually Supported and Authorized by Law**

      **1. Defendants Pirated Plaintiff's Works for Commercial Gain**

29.  It is well settled that, "to prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) the ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.2d 101, 108-109 (2d Cir. 2001); *Hamil America, Inc. GFL*, 193 F.3d 92 (2d Cir. 1999).

30.  Liberty has shown that it owns the copyright in the three works at issue and that defendants directly infringed upon them by duplicating and distributing exact copies of these works.

      **2. Statutory Damages Are Authorized**

31.  The Copyright Act provides for a plaintiff to recover, at its election, either (1) its actual damages and (to the extent not redundant) defendant's profits attributable to infringement, or (2) statutory damages.

32.  If the works were registered with the U.S. Copyright Office prior to the commencement of the infringing activity, the copyright holder may elect statutory damages in the amount of $750.00 to $30,000.00 per work, increased to $150,000.00 in cases (such as this one) of willful infringement.  17 U.S.C. § 504(c).

33.  Plaintiff registered the Works prior to the commencement of the infringing activity.

34.  Because actual damages are often hard to prove, statutory damages have been authorized to make such proof unnecessary. *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991).  Where timely registered works are infringed, as occurred here, the Copyright Act authorizes statutory damages. 17 U.S.C. §504(c).  Where, as here, infringement is "willful," the amount may be as high as $150,000 for each infringed work. *Id.* Congress increased the maximum from $100,00 to $150,000 because it found large awards to be necessary and desirable to deter the great temptation to infringement posed by modern computer technology.  H.R. Rep. No. 106-216 (1999), pp.6-7.  The critical purpose of deterring similar misconduct permits a maximum per work award for willful infringement, even where the

infringement caused little to no damage. *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 496-97 (4th Cir. 1996) (collecting authority and sustaining maximum awards despite no proof of actual damages); *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 234 (1952) (for willful infringement a maximum award is permissible "even for uninjurious and unprofitable invasions").

### 3. The Infringing Acts Harmed the Value of Liberty's Works

35. In *Perfect 10, Inc. v. Talisman Communs., Inc.*, 2000 U.S. Dist. LEXIS 4564 (C.D. Cal. Mar. 27, 2000), plaintiff magazine publisher sued a website for publishing its photographs on the Internet. Evaluating damages the Court wrote, "While it would be difficult to quantify Perfect 10's damages resulting from the infringement, it is clear that Perfect 10 has been severely damaged. The photographs have been distributed worldwide, in a form that is easy to download and easy to copy. A virtually unlimited number of copies can be made of the copyrighted photographs, as a result of [defendant's] infringement." *Perfect 10, Inc.*, 2000 U.S. Dist. LEXIS 4564 at 11. The Court went on to award the maximum statutory award for willful infringement ($100,000 per work at the time) for each infringed photograph. This $100,000 per photograph certainly demonstrates a legal basis for Liberty claiming that much per DVD (if not more).

36. "When digital works are distributed via the internet, as in this case, every downloader who receives one of the copyrighted works from Defendant[s] is in turn capable of also transmitting perfect copies of the works. Accordingly, the process is potentially exponential rather than linear, threatening virtually unstoppable infringement of the copyright." *Elektra Entm't Group, Inc. v. Bryant*, 2004 U.S. Dist. LEXIS 26700 (C.D. Cal. Feb. 13, 2004), citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013-1014 (9th Cir. 2001).

### 4. The Facts and Law Support A Maximum Statutory Award

37. The Defendant's illegal actions were not a momentary lapse, but a sustained commercial enterprise. To deter others from yielding to the same temptation, a large award is appropriate. *Yurman*, 262 F.3d at 113-114.

38.     Defendants willfully infringed on at least three of Liberty's works. Without the benefit of discovery, it is unknown how many other works Defendants may have unlawfully copied and distributed.

39.     On a motion for default judgment, a district court awarded a maximum statutory award of $150,000 each for infringements of *The Last Samurai* and *Mystic River*, when a member of the Academy of Motion Picture Arts and Sciences who had been provided with a screener copy of the movies allowed the movies to be duplicated and distributed via the Internet. *Warner Bros. Entm't, Inc. v. Caridi*, 346 F. Supp. 2d 1068 (C.D. Cal. 2004). Similarly, in *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.* (259 F.3d 1186 (9th Cir. 2001)(cert denied, 534 U.S. 1127 (2002)), the Ninth Circuit affirmed an award of approximately $72,000 per infringement of several half-hour television shows.

40.     A federal court awarded $5,000 per erotic photograph (*Playboy v. Webbworld*, 968 F. Supp. 1171, 1176 (E.D. Tex. 1997)) and where infringement was found to be willful a court awarded $100,000 (the maximum award at the time) per adult photograph. *Perfect 10, Inc.*, 2000 U.S. Dist. LEXIS 4564 at 11.

41.     Statutory damages serve both compensatory and punitive purposes, and thus may be appropriate "whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant" in order to effectuate the statutory policy of discouraging infringement. *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998).

**5. Increased Damages for Willfulness**

42.     "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Defendants knew or should that known that their acts constituted copyright infringement. They knew that they did not have Liberty's permission to reproduce and distribute the Works for their own commercial gain and could only remain unaware of the infringing nature of their actions by engaging in willful blindness.

43.     The "statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 97 L. Ed. 276, 73 S.Ct. 222 (1952).

44.     It is appropriate that the Court use opportunities such as this to send a message of deterrence to would be infringers that, "it costs less to obey the copyright laws than to disobey them." *International Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (D.N. Ill. 1987), affirmed 855 F. 2d 375 (N.D. Ill. 1987).  The District Court in *Korwin* held that, "[t]o determine the amount of statutory damages the court should primarily focus upon two factors:  the willfulness of the defendant's conduct, and the deterrent value of the sanction imposed," pointing out that "courts have repeatedly emphasized that defendants must not be able to sneer in the face of copyright owners and copyright laws." *Id*.  See also, *Hickory Grove Music v. Andrews*, 749 F. Supp. 1001, 1003 (D. Mont. 1990); *Van Halen Music v. Foos*, 728 F. Supp. 1495 (D. Mont. 1989).

45.     Therefore, it is proper to award maximum damages for the intentional infringement of Liberty's copyrighted motion pictures.

46.     At the maximum of $150,000 per work for three works, statutory damages of $450,000 are appropriate, or actual damages of $990,440.40.

**7. Liberty Is Entitled to Injunctive Relief and Attorney's Fees**

47.     17 U.S.C. § 502(a) makes express that the Court may issue "final injunctions on such terms as it may deem just to prevent or restrain infringement of a copyright."  Thus, such relief is authorized here by Defendants' conduct.

48.     17 U.S.C. § 505 provides that the Court may "award a reasonable attorney's fee to the prevailing party as part of the costs." See also, *Warner Bros. Ent, Inc. v. Duhy*, 2009 U.S. Dist. LEXIS 123332, 8-9 (C.D. Cal. Nov. 30, 2009), citing *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 289 (2d Cir. 1999) (finding a district court's award of attorneys' fees under Section 505 to be "justified based on the court's finding of willfulness and [ ] in line with the statutory goal of deterrence")

### E. Discussion of *Eitel* Factors

49. The Court, in considering whether to grant a Motion for Default Judgment, may consider the following factors: (1) the possibility of prejudice to the Plaintiff; (2) the merits of Plaintiff's substantive claim; (3) the sufficiency of the Complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). As illustrated below, all seven of these factors favor the entry of a default judgment.

#### 1. Possibility of Prejudice to Plaintiff

50. Liberty will be prejudiced if default judgment is not entered. Liberty served process on Defendants pursuant to the Fed. R. Civ. P. and pursuant to this court's order. Doc. No. 15, 16, and 17. No Defendant has cared to appear in this action. If Plaintiff's Application for Default Judgment is not granted, it "will likely be without recourse for recovery." *PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2002).

51. Moreover, due to the fact that Plaintiff has stated a valid copyright claim, Plaintiff "undeniably would be prejudiced absent an entry of permanent injunctive relief [by] default judgment." *PepsiCo, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F. Supp.2d 1110, 1116 (S.D. Fla. 2007). As such, Plaintiff will be sufficiently prejudiced to warrant the entry of default judgment.

52. Additionally, absent a default judgment awarding damages and enjoining Defendants from engaging in similar behavior, there would be little from stopping these Defendants (and many other persons with similar inclinations around the world) from merely engaging in this behavior again.

#### 2. The Merits of Liberty's Substantive Claim and the Sufficiency of the Complaint

53. Factors two and three of the *Eitel* test require an analysis of Plaintiff's claims and the sufficiency of the Complaint. Plaintiff has asserted a prima facie claim for copyright infringement. Specifically, Plaintiff has alleged that a) it owns and has registered the copyright in the Works and b) the Defendants made unauthorized reproductions of those works and

distributed them without Plaintiff's authorization. These allegations state a claim for copyright infringement.

### 3. The Amount of Money At Stake

54. As shown in Doc. No. 24-1 ¶ 75, actual damages of $990,440.40 or statutory damages of $450,000 are appropriate for (at a statutory maximum of $150,000 per infringement) for Defendants' willful infringement. (Doc. 24-3 ¶ 7).

### 4. The Remaining Factors

55. Factors five, six, and seven have also been satisfied. There can be little dispute as to the material facts. Plaintiff documented three of its copyrighted works on the Defendants' website, vinigay.com. Plaintiff has demonstrated that it owns the copyrights for these works, and that registration occurred before the infringing activity. Defendants came forward in an email to Plaintiff's attorney and admitted that they are the responsible party. There is no evidence that there is a dispute concerning material facts or that default was due to excusable neglect. Defendants had an opportunity to challenge the amended Complaint, and the entry of default, but rather they chose to ignore the action entirely.

56. With regard to factor seven, although "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *Cal. Security Cans*, 238 F.Supp. at 1777. Moreover, Defendants' failure to answer or otherwise respond to the Complaint "makes a decision on the merits impractical, if not impossible." *Id*.

**IT IS SO ORDERED:**

Plaintiff's Application for Default Judgment is granted. For the reasons demonstrated above, the court hereby awards:

1) Damages in the amount of $990,440.40 with an interest rate of 1/5% per month until paid in full;
2) An award of attorney's fees of $12,855.00 and costs of suit of $805.40.

Additionally, Defendants, their respective agents, servants, employees, and any other persons or entities acting on their behalf are hereby permanently enjoined from infringing upon

1  any of the Plaintiff's copyrights, and the domain name vinigay.com shall be permanently
2  disabled.

4  Date: _____, 2011.

                                                       _____
                                                       Lawrence O. Anderson
                                                       United States Magistrate Judge

Proposed Order Granting Application for Entry of Default Judgment