1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

9   Liberty Media Holdings, LLC,    )   No. CV-11-280-PHX-LOA
)
10             Plaintiff,    )   **REPORT AND**
)   **RECOMMENDATION,**
11   vs.              )   **FINDINGS OF FACT, AND**
)   **CONCLUSIONS OF LAW**
12                    )
)
13   Vinigay.com; Gustavo Paladeski; Vinicius)
14   Alves,               )
)
15            Defendants.    )
)
16                    )

17
18       A default damages hearing was conducted in open court on July 8, 2011, after the

19   entry of default against Defendants vinigay.com, Gustavo Paladeski, and Vinicius Alves

20   on the Amended Complaint of Plaintiff Liberty Media Holdings, LLC ("Plaintiff"). (Doc.

21
22   6)  Testifying at the hearing were Eric Gapp, Plaintiff's Vice President of Intellectual

Property Management, and Henry Leonard, a certified public accountant. (Default

24   hearing transcript ("Tr.") 6-20, 22-35; doc. 33 at 7-20, 23-35)  Pursuant to General Order

25   11-3,[1] the undersigned Magistrate Judge recommends that default judgment be entered in

26

27       [1] General Order 11-3, entitled Dismissal of a Civil Case Assigned to a United States
28   Magistrate Judge Absent Voluntary Consent by the Parties Under 28 U.S.C. § 636(c)(1),
directs that when a Phoenix Division magistrate judge to whom a civil action has been
assigned lacks jurisdiction to proceed, the order or, in this case, the report and

favor of Plaintiff against Defendant Gustavo Paladeski in the amount of $990,440.40, plus Plaintiff's attorney's fees, non-taxable expenses, costs, and injunctive relief for the reasons set forth in this Report and Recommendation. The undersigned also recommends that, because Defendant vinigay.com is not a jural entity and the District Court of Arizona does not have personal jurisdiction over Defendant Vinicius Alves, Plaintiff's claims against them be dismissed.

## I. Background

### A. Introduction

On February 16, 2011, Plaintiff filed an Amended Complaint,[2] alleging copyright infringement arising out of the "pirating"[3] of three videos[4] from Plaintiff's website onto Defendants' website, www.vinigay.com, commonly referred to as a "tube site."[5] (Docs. 6;

recommendation shall be directed to Senior United States District Judge Stephen M. McNamee for ruling. General Order 11-3, www.azd.uscourts.gov at Rules/General Orders.

[2] The original Complaint was filed on February 10, 2011. (Doc. 1)

[3] "Pirating" occurs by unauthorized copying or distributing of copyrighted videos or other works from one website for publication on another without the consent of the video's rightful owner or licensee. *See*, *Seoul Broadcasting System Intern., Inc. v. Young Min Ro*, 2011 WL 3207024, * 9 (E.D.Va. July 27, 2011) (certain "[D]VDs were not direct copies of the plaintiffs' masters, but instead had been downloaded or captured from unauthorized sources, such as online video pirating websites."); *Perfect 10, Inc. v. Megaupload Ltd.*, 2011 WL 3203117, * 2 (S.D.Cal. July 27, 2011) (discussion of pirated movies, songs, software, and images).

[4] The specific videos are entitled Cory Fucks Lucas, Dave Fucks Dawson, and Cain Fucks Travis. (Doc. 1-7, Exh. 6 at 2)

[5] A "tube site" is a website that collects videos from other sites, either with or without permission, and rebroadcasts them. *See*, http://www.usatoday.com/tech/news/2010-03-02-porn02_ST_N.htm. Youtube.com, for example, is a lawful and popular Internet video hosting tube site found at www.youtube.com. *See*, *Lenz v. Universal Music Corp.*, 572

24-1, ¶ 37; Tr. at 29)  Described at the hearing as a "very large plague upon [the adult-entertainment] industry," tr. 4, Plaintiff alleges Defendants unlawfully copied Plaintiff's copyrighted videos from corbinfisher.com, Plaintiff's website and the trade name by which Plaintiff conducts its business.[6] (Doc. 24-1, ¶ 25 at 5; Tr. at 13)  Plaintiff owns the copyrights to the pirated videos which are registered with the United States Copyright Office. (Docs. 1, ¶ 11 at 2-3; 24-1, ¶ 25 at 5, Gapp Declaration ("Decl."), ¶¶ 2-3; 24-10, Exhibit ("Exh.") 7; Tr. 11)   Plaintiff's three videos also carry Plaintiff's federally-protected trademarks. (Docs. 24-1, ¶ 25 at 5; 24-10, Exh. 7 at 2-4)

After valid service of process by email pursuant to Rule 4(f)(3) and (h)(2), Fed.R. Civ.P., with leave of the Court, doc. 10,[7] Defendants did not answer or otherwise respond to the Summons and Amended Complaint. As a result, Plaintiff sought the entry of

---

F.Supp.2d 1150, 1152 (N.D.Cal. 2008). According to Plaintiff, online piracy by tube sites is one of the greatest threats faced by Plaintiff and the adult entertainment industry as a whole. (Doc. 24-2, Exh. 2, ¶ 8 at 2) *See also*, doc. 33, tr. at 29; *IO Group, Inc. v. Jordon*, 708 F.Supp.2d 989 (N.D.Cal. 2010) (another infringement action of copyrighted adult entertainment works).

[6] A redacted copy of Plaintiff's webpage is located at document 24-11, Exh. 8 at 2-3. Note: the bottom of page 2 states: "Unauthorized reproduction or distribution of any component of this site, in whole or in part, is a violation of applicable federal copyright laws and international copyright treaties." (Doc. 24-11, Exh. 8 at 3)

[7] "The Court . . . finds that service of Defendants through email is appropriate and that it comports with due process. Plaintiff has demonstrated that it has been unable to obtain a physical address for Defendants. Additionally, Plaintiff has shown that because Defendants conduct business through the [I]nternet and have contacted Plaintiff's counsel via email, service through email will give Defendants sufficient notice and opportunity to respond. The Court also finds that issuing an order allowing service via email would not be prohibited by international agreement." (Doc. 10 at 7)

default according to Rule 55(a), Fed.R.Civ.P.  Defendants' defaults were entered on April 18, 2011. (Docs. 20, 22)  On May 31, 2011, Plaintiff filed an application for entry of default judgment against Defendants and requested an evidentiary hearing pursuant to Rule 55(b)(2), Fed.R.Civ.P.  (Doc. 24)  Because the Amended Complaint requested non-liquidated monetary damages and injunctive relief, a default damages evidentiary hearing was held on July 8, 2011. (Doc. 29)  *See*, *Holtsinger v. Briddle*, 2007 WL 1080112, * 1 (E.D.Cal. 2007) ("[W]hen a plaintiff's damages are unliquidated (i.e., [in]capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits) or punitive, they require 'proving up' through an evidentiary hearing or some other means.") (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods*., 722 F.2d 1319, 1323 (7th Cir. 1983) ("A judgment by default may not be entered without a hearing on damages unless, . . . the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.") (citations omitted). Pre-hearing and post-hearing proposed findings of fact and conclusions of law were filed on June 23, 2011 and July 31, 2011, respectively. (Docs. 25, 34)  Plaintiff also timely responded to the Court's November 21, 2011 Order to Show Cause with supplemental briefing on the issue of extraterritorial copyright infringement. (Docs. 38-39)

**B. The Parties**

Plaintiff is a California limited liability company which has its headquarters, and a mailing address on Washington Street, in San Diego, California. (Doc. 6, ¶ 10 at 2) Plaintiff produces, markets, and distributes adult-oriented audiovisual works under the

registered marks CORBIN FISHER®, and CORBIN FISHER'S AMATEUR COLLEGE SEX®, including photographs, books, DVDs, through the operation of its website. (*Id.*, ¶ 11 at 2-3)  Plaintiff's website has "free tour" areas where G-Rated photographs may be viewed, but its more explicit, erotic works are only available to individuals who pay a monthly subscription fee or purchase a DVD. Under the name Corbin Fisher, Plaintiff represents it is one of the largest producers of high quality adult-entertainment media and gay erotica in the United States, winning a number of awards, such as, "the Cybersocket Award for Best Adult Gay Megasite in 2006, Free Speech Coalition Award of Excellence in 2010, and the Xbiz Award for Gay Site of the Year in 2011." (Doc. 24-1, ¶ 50 at 9; Tr. 14)  Plaintiff prohibits persons under the age of 18 from accessing its more explicit works on its website, and does not sell its DVDs to minors. (Doc. 6 at 3)

Defendants' website www.vinigay.com provides adult-themed audiovisual content to the public, and competes with Plaintiff in the distribution and sale of adult-oriented, audio-visual works through the Internet. (Doc. 6, ¶¶ 14-15, 24 at 3-4)  Defendants Paladeski and Alves, residents of Brazil, are the owners and operators of the website and domain name, www.vinigay.com.[8] (*Id.*, ¶¶ 17, 20 at 3-4)  The website

---

[8] A domain name is not a distinct legal or jural entity with the power to sue or be sued. "The term 'domain name' means any alphanumeric designation which is registered with or assigned by any domain name registrar domain name registry, or other domain name registration authority as part of an electronic address on the Internet." 15 U.S.C. § 1127.

Except for a possible *in rem* action under the Anticybersquatting Consumer Protection Act and because Plaintiff has not cited any authority that a website or domain name possesses the power to sue or be sued, the Court will recommend Defendant vinigay.com be dismissed. *See*, *Office Depot Inc. v. Zuccarini*, 596 F.3d 696 (9th 2010); *Gotbaum v. City of Phoenix*, 617 F.Supp.2d 878, 886 (D.Ariz. 2008) (explaining that "[c]onsistent with its previous decision in *Wilson* [Maricopa County, 2005 WL 3054051 (D.Ariz. Nov. 15, 2005)

vinigay.com is a tube site whose primary, if not all, works contain copyrighted porno-graphic films which were likely unlawfully downloaded from various adult-entertain-ment pay sites, including Plaintiff's, then unlawfully uploaded and redistributed through tube sites for free, usually resulting in a profit of the tube owner via referral fees.[9] (Docs. 6, ¶ 24 at 4; 24-2, Exh. 2, ¶ 6 at 2; Tr. 4-5, 29)  Defendants' website is free to join and Internet users may view its videos and links to www.megaporn.com where paying members of megaporn.com may download the videos. (Doc. 6, ¶ 24 at 4)  Megaporn.com sells monthly subscriptions for $11.23 per month or $112.45 per year. When someone purchased a membership with megaporn.com upon a referral by vinigay.com, Defendants received a commission and, thereby, "profit[ed] off of the Plaintiff's copyright[ed] works without any royalty or payment to Liberty Media." (*Id.*; tr. at 15)

According to Brian Dunlap, Plaintiff's Chief Operations Officer, Defendants unlawfully obtained Plaintiff's three videos. (Doc. 39-1, ¶ 5 at 1)  After his examination of Corbin Fisher's business and membership records for its website, Mr. Dunlap deter-mined Defendants Paladeski and Alves never registered for a Corbin Fisher account. (*Id.*,

---

(dismissing the Maricopa County Sheriff's Office as a non-jural entity], the Court concludes that the Phoenix Police Department is a subpart of the City of Phoenix, not a separate entity for purposes of suit.").

[9] Interestingly, attachment A to document 34-1 at 1-5 is a copy of the Terms of Use as posted to the Vinigay.com website at the time it was operational which claims that its pirated works are, among others, "subject to copyright and other intellectual property rights in Brazil, the United States, Canada and foreign laws and international conventions. Website content is provided to you as it is for your information and personal use and may not be used, copied, reproduced, distributed, transmitted, displayed, sold, licensed or otherwise exploited for other purposes without the prior written consent of their respective owners. . . ." (Doc. 34-1 at 2)

¶ 4 at 1)  In fact, he averred that Corbin Fisher does not have any members residing in Brazil. (*Id*., ¶ 12)  Mr. Dunlap explained that Plaintiff's three stolen works are not available on either "CF Select," the Corbin Fisher site that permits an individual to purchase its works without a membership, or Corbin Fisher DVDs. (*Id*., ¶ 5)  He opined that, because neither of the two individuals Defendants could have downloaded Plaintiff's works lawfully, they "must have downloaded them illegally." (*Id*., ¶ 6)  He informed the Court that, despite Corbin Fisher's pre-cautions to minimize cyber theft, "the way in which cyber criminals [steal copyrighted works] is by using stolen passwords to access [members'] accounts on the Corbin Fisher website [or] by using stolen credit card numbers to establish phony accounts." (*Id*., ¶¶ 7-9)

## II. Jurisdiction

"[W]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has the affirmative duty to look into its jurisdiction over the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter judgment in the first place."); *Golden Scorpio Corp. v. Steel Horse Saloon I*, 2009 WL 976598, * 3 (D.Ariz. April 09, 2009).

### A. Subject-Matter Jurisdiction and Venue

Generally, federal courts possess original subject-matter jurisdiction over copyright infringement actions because they arise under the laws of the United States. 28

U.S.C. §§ 1331, 1338(a); *Reed Elsevier, Inc. v. Muchnick*, ___ U.S. ___, 130 S.Ct. 1237, 1246 (2010) ("Federal district courts have subject-matter jurisdiction over copyright infringement actions based on 28 U.S.C. §§ 1331 and 1338."); *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, ___ F.3d ___, 2011 WL 6357788, * 4 (9th Cir. 2011). As discussed later, venue is also appropriate in the District of Arizona because Defendant Paladeski voluntarily consented to venue in Maricopa County, Arizona. *Productive People, LLC v. Ives Design*, 2009 WL 1749751, * 2 (D.Ariz. June 18, 2009) ("A contract's forum selection clause alone is sufficient to confer . . . venue[.]") (citing *Chan v. Soc'y Expeditions, Inc*., 39 F.3d 1398, 1406-07 (9th Cir. 1994); *see also*, *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) (forum selection clause in contract, providing that venue of action brought under contract would be deemed to be in Virginia, was enforceable).

## B. Extraterritorial Infringement Immunity

"While the jurisdictional statute for copyright claims, 28 U.S.C. § 1338(a), provides a district court with original jurisdiction over any civil action arising under federal copyright law, it is a long-standing principle that United States copyright laws do not have extraterritorial operation." *Liberty Toy Co v. Fred Silber Co.*,149 F.3d 1183, * 3 (6th Cir. 1998) (citations omitted). The Ninth Circuit has determined that "[t]he United States copyright laws do not reach acts of infringement that take place entirely abroad." *Subafilms, Ltd. v. MGM-Pathe Comm'ns Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994) (*en banc*), *cert. denied*, 513 U.S. 1001 (1994); *Rundquist v. Vapiano SE*, ___ F.Supp.2d ___, 2011 WL 2881333, * 16 (D.D.C. July 20, 2011) (citations omitted). The Ninth Circuit has

not retreated from its 1994 holding in *Subafilms* that a law passed by Congress is generally assumed to apply to conduct occurring within the boundaries of the United States. *Blazevska v. Raytheon Aircraft Co.*, 522 F.3d 948, 954 (9th Cir. 2008) (confirming *Subafilms'* holding that copyright infringement in foreign distribution of films is not actionable in the United States).

According to a recent district court decision, "[t]here is currently no clear consensus among the courts regarding whether the issue of the extraterritorial reach of the Copyright Act should be treated as a matter of subject matter jurisdiction, or should instead be treated as an element of a claim." *Elmo Shropshire v. Canning*, 2011 WL 3667492, * 2 (N.D.Cal. August, 2011) (citing cases within and outside the Ninth Circuit, including *Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1368 (Fed.Cir. 2008) ("[h]olding the issue is properly treated as an element of the claim which must be proven before relief can be granted, not a question of subject matter jurisdiction"); *see also*, *Doe v. Geller*, 533 F.Supp.2d 996, 1003 (N.D.Cal. 2008) ("[c]opyright law is especially unsettled when it comes to cross-border communications."). In *Elmo*, the district court found the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) "requires extraterritoriality to be decided as an element of a claim for copyright infringement rather than an issue of subject matter jurisdiction." 2011 WL 3667492 at 4; *see also*, *Wood v. Houghton Mifflin Harcourt Pub. Co.*, 569 F.Supp.2d 1135, 1138 (D.Colo. 2008) ("Given recent Supreme Court guidance regarding subject matter jurisdiction, however, this Court concludes that the extraterritorial application of United States copyright laws represents an element of [the plaintiff's] claim for copyright

infringement and does not affect subject matter jurisdiction").

Notwithstanding extraterritorial copyright infringement immunity discussed in *Subafilms*, the Ninth Circuit has found that if one act of infringement is completed within the United States, the Copyright Act applies. In *L.A. News Service v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990-91 (9th Cir. 1998), the court held that where the infringing videos were copied in New York and then transmitted abroad, copying the videos in New York qualified as a domestic act of infringement even though the transmissions were extraterritorial. Compare *Los Angeles News Service v. Reuters Television Intl., Ltd.*, 149 F.3d 987 (9th Cir. 1998) (finding jurisdiction over a television broadcast from the United States to Africa) with *Allarcom Pay Television Ltd. v. General Instrument Corp*., 69 F.3d 381, 387 (9th Cir. 1995) (finding no jurisdiction over a television broadcast from the United States to Canada). In *Geller*, 533 F.Supp.2d at 1003-04, the district court cited Andreas P Reindl, *Choosing Law in Cyberspace: Copyright Conflicts on Global Networks*, 19 Mich. J Int'l L 799, 823 n. 84 (1998), which criticizes *Allarcom*, and *National Football League v. PrimeTime 24 Joint Venture*, 211 F.3d 10, 13 (2d Cir. 2000) (rejecting *Allarcom* and holding that "each step" in the transmission procedure can give rise to jurisdiction).

Plaintiff relies upon, among others, *Columbia Pictures Industries, Inc. v. Fung*, 2009 WL 6355911 (C.D.Cal. Dec. 21, 2009), which states that

> [t]he acts of uploading and downloading are each independent grounds of copyright infringement liability. Uploading a copyrighted content file to other users (regardless of where those users are located) violates the copyright holder's § 106(3) distribution right. Downloading a copyrighted content file from other users

(regardless of where those users are located) violates the copyright holder's §
106(1) reproduction right. *A & M Records, Inc. v. Napster, Inc*., 239 F.3d 1004,
1014 (9th Cir. 2001). . . Plaintiffs need not show that a particular file was both
uploaded and downloaded entirely within the United States.

2009 WL 6355911 at 8. (Doc. 39 at 7)  Plaintiff acknowledges that its Amended

Complaint "did not specifically allege the precise fact that there was an act of infringe-

ment inside the United States. However, the Plaintiff did allege that the wrongs

complained of occurred in this district." (*Id.*, citing doc. 6, ¶ 7)  Plaintiff argues that "[t]he

Defendants illegally duplicated the Plaintiff's works in the United States. (citation

omitted)  They distributed them from U.S. servers. (citation omitted)  Then they distri-

buted them to Americans." (*Id.*)  Even though Plaintiff failed to identify the location of its

host server, the Court agrees the rule of extraterritorial immunity is inapplicable here.

The Court concludes that Defendants' acts of direct infringement - unlawfully

downloading Plaintiff's three videos to vinigay.com, even assuming Defendants' website

and server were located outside the United States, from Plaintiff's web server in Tampa,

Florida[10] for display, distribution, and copying by Internet users in the United States and

_____

[10] Pursuant to its discretion provided in Federal Rule of Evidence 201, the Court takes
judicial notice that Plaintiff's Internet server is, and was at the time of the infringement,
located in Tampa, Florida, a fact that "can be accurately and readily determined from sources
whose accuracy cannot reasonably be questioned." Rule 201(b)(2), Fed.R.Evid.; *MGIC
Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (courts may take judicial notice
of matters of public record outside the pleadings); *Lorraine v. Markel American Ins. Co.*, 241
F.R.D. 534, 553 (D.Md. 2007) ("Judicial notice could be a helpful way to establish certain
well known characteristics of computers, how the internet works, scientific principles
underlying calculations performed within computer programs, and many similar facts that
could facilitate authenticating electronic evidence."); *United States v. Richardson*, 583
F.Supp.2d 694, 715 (W.D.Pa. 2008).
    To find the location of Plaintiff's host server, the Court first determined the

the rest of the world - constitute acts of infringement that are not wholly extraterritorial to the United States.[11] *Accord*, *Elmo*, 2011 WL 3667492, * 5 ("The Court finds that in this case, the alleged act of direct copyright infringement - uploading a video from Canada to YouTube's servers in California for display within the United States - constitutes an act of infringement that is not "wholly extraterritorial" to the United States."); *Righthaven, LLC v. Majorwager.com, Inc*., 2010 WL 4386499, * 6 (D.Nev. October 28, 2010) (citing *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc*., 216 F.Supp.2d 198, 225 (S.D.N.Y. 2002) (holding that a New York based newspaper stated a claim of copyright

---

corbinfisher.com (domain name) numeric IP address by accessing the Windows Start Menu, click on Start, then to Programs, click on Accessories, click on Command Prompt, and enter a network command called "nslookup" (nslookup corbinfisher.com) which translates Plaintiff's Internet domain name into its numeric IP address or 67.22.100.94. Next, the Court went to a browser, opened the American Registry of Internet Numbers' ("ARIN") whois site at http://whois.arin.net, and entered 67.22.100.94 into the Search Whois window which reveals that the corbinfisher.com site, 67.22.100.94, is registered to Excelsor Media, located in Tampa, Florida.

Because the ARIN database relies upon a web site/server as being up and operational in order to return search results for the site being queried, and vinigay.com has been shut down by Wild West Domains, the Court was unable to perform a similar address search on vinigay.com for the location of its server.

[11] At the hearing, Mr. Gapp testified as follows:

THE COURT: So anybody anywhere in the world that has access to the web and internet could go to Vinigay.com, view your copyright works without paying Liberty Media anything or even the pirate website, right?

THE WITNESS: Yes, that is correct.

(Doc. 33, tr. at 14)

infringement based upon Canadian agent's display on its Internet website because the website could be accessed from the United States); *Litecubes*, 523 F.3d at 1372 ("Substantial evidence supports the jury's conclusion that, by selling to customers in the United States, [defendant's] distribution of the accused products has taken place, at least in part, in the United States.").

### C. Personal Jurisdiction

Under the Fourteenth Amendment, a court may obtain personal jurisdiction over a defendant through general jurisdiction, specific jurisdiction, personal service upon defendant within the forum state, through specific consent, or through waiver by the defendant. The plaintiff bears the burden of establishing that the court has personal jurisdiction over each defendant. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). "[T]he plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). As a general rule, once default is entered, the factual allegations of the complaint are taken as true, except for those allegations relating to the damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citations omitted). "Nonetheless, mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Fiore v. Walden*, 657 F.3d 838, 846-47 (9th Cir. 2011) (internal quotation marks omitted) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)).

In the Ninth Circuit, "[p]ersonal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004). Arizona's long arm statute is co-extensive with federal due process requirements; hence, the jurisdictional analyses under Arizona law and federal due process are the same.[12] *Pacific Scientific Energetic Materials Co. (Arizona) LLC v. Ensign*, 2011 WL 4434039, * 3 (D.Ariz. September 23, 2011) (citing Ariz.R. Civ.P. 4.2(a)); *Golden Scorpio Corp. v. Steel Horse Saloon I*, 2009 WL 348740, * 3 (D.Ariz. February 11, 2009) (citing *Schwarzenegger*, 374 F.3d at 801). Therefore, absent traditional grounds for exercising personal jurisdiction over a non-resident defendant, such as, physical presence, domicile, or consent, due process requires that non-resident defendants have certain "minimum contacts" with the forum state, "such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Kruska v. Perverted Justice Foundation Inc*., 2009 WL 249432 (D.Ariz. February 2, 2009) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). If a court determines that a non-resident defendant's contacts with the forum state are sufficient to satisfy the Due Process Clause, then the court may exercise either "general" or "specific" jurisdiction over that out-of-state defendant. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) ("There are two forms of personal jurisdiction that a forum

---

[12] Because there is no general federal long-arm statute, federal courts look either to the long-arm statutes of the state in which the district court sits or specific federal statutes which authorize the exercise of jurisdiction. *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).

state may exercise over a nonresident defendant - general jurisdiction and specific

jurisdiction."). Based upon his execution of the forum selection clause discussed below,

the Court concludes that it has jurisdiction over Defendant Paladeski only.[13] *Id.* at 1116,

n. 2.

    In order to establish specific jurisdiction over a non-resident defendant, the Ninth

---

[13] Plaintiff argues that the District Court of Arizona has general jurisdiction over both individual Defendants because they engaged in business activities and entered into a business relationship in Arizona through the domain name registrar, Wild West Domains, which satisfy the minimum contacts test, distinguishing *Boschetto*, 539 F.3d at 1017 (although a "one-shot" purchase is insufficient, an ongoing contractual obligation - *e.g.*, the provision of registry services on a recurring monthly basis - demonstrates purposeful availment); *Davis v. Metro Productions, Inc*., 885 F.2d 515, 520 (9th Cir. 1989) (acknowledging consummation of transaction with Arizona resident as sufficient to confer personal jurisdiction). (Doc. 24-1, Memorandum at 1) The Court disagrees.

    Defendants' conduct here was not expressly aimed at Arizona, Plaintiff's injury did not occur in Arizona, and, at best, Plaintiff's injury occurred in California where Plaintiff maintains its headquarters. *See*, *Penguin Group (USA) Inc. v. American Buddha*, 640 F.3d 497 (2nd Cir. 2011) (holding that for purposes of personal jurisdiction analysis pursuant to New York's long-arm statute, the situs of plaintiff's alleged injury occurred in New York and New York district court may have jurisdiction upon remand over Oregon corporation with its principal place of business in Arizona for copyright infringement suit alleging that defendant's posting of plaintiff's works on the Internet violated plaintiff's copyrights in works that it had published).

    Further complicating the jurisdictional question is that "[l]itigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988) (citing *Asahi Metal Industries v. Superior Court of Solano County*, 480 U.S. 102 (1987) and *FDIC v. British-American Ins. Co. Ltd*., 828 F.2d 1439, 1444 (9th Cir. 1987)).

    The Court concludes that Plaintiff has presented insufficient evidence of Defendants' substantial or "continuous and systematic" contacts with Arizona, the forum state, to assert general jurisdiction over Defendants that comports with constitutional due process. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *Mavrix Photo, Inc. v. Brand Technologies, Inc*., 647 F.3d 1218 (9th Cir. 2011); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006).

Circuit instructs that a plaintiff must meet the following three-part test:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

.

*Id*. (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden on the first two prongs." *Boschetto*, 539 F.3d at 1016 (citation omitted). "If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). "But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." *Id.* (citation omitted).

### D. Waiver through Forum Selection Clause

The great weight of authority provides that a defendant may waive his right to challenge personal jurisdiction through a contract, such as, a forum selection clause. *See*, *e.g.*, *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (forum selection "clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."); *National Equipment Rental Ltd. v. Szukhent*, 375 U.S. 311, 315-316 (1964) (stating that "parties to a contract may agree in advance to submit to the jurisdiction of a given court."); *Spradlin v. Lear Siegler Mgmt.*

*Servs. Co.*, 926 F.2d 865, 868 (9th Cir. 1991); *Preferred Capital, Inc. v. Associates in*

*Urology*, 453 F.3d 718 (6th Cir. 2006); *Global Satellite Communication Co. v. Starmill*

*U.K. Ltd.*, 378 F.3d 1269 (11th Cir. 2004); *Northwestern National Ins. Co. v. Donovan*,

916 F.2d 372 (7th Cir. 1990).  Forum selection clauses are presumed to be valid and the

burden is on the party resisting enforcement to show that enforcement of the clause would

be unreasonable under the circumstances. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S.

585, 589 (1991); *Holland Am. Line, Inc. v. Wartsila N. Am., Inc*., 485 F.3d 450, 458 (9th

Cir. 2006) ("Under general contract principles, a forum selection clause may give rise to

waiver of objections to personal jurisdiction . . . provided that the defendant agrees to be

so bound."). Federal law is applied to interpret a forum selection clause. *Simonoff v.*

*Expedia, Inc*., 643 F.3d 1202, 1205 (9th Cir. 2011).

        In *Productive People*, 2009 WL 1749751, District Judge G. Murray Snow found

that "[a] contract's forum selection clause alone is sufficient to confer personal juris-

diction [.]") (citing *Chan v. Soc'y Expeditions, Inc*., 39 F.3d 1398, 1406-07 (9th Cir.

1994)). In *Productive People*, Judge Snow reviewed GoDaddy.com's terms of use and

determined that the language of that agreement governed all disputes concerning the use

of a domain name registered under the agreement, and the signatories to the agreement

submitted to the jurisdiction of Arizona. *Id*.  The agreement in *Productive People*

provided "[f]or the adjudication of disputes concerning the use of any domain name

registered with GoDaddy, You agree to submit to jurisdiction and venue in the U.S.

District Court for the District of Arizona located in Phoenix, Arizona."[14]

Plaintiff has factually established that the copyright infringements in this case occurred on a website found at www.vinigay.com. (Docs. 24-2, 25, 30, Exh. 4)  The domain name, vinigay.com, was registered through a Scottsdale, Maricopa County, Arizona domain name registrar, known as "Wild West Domains," which is located at 14455 North Hayden Rd., # 226, Scottsdale, AZ 85260. (Doc. 24-5)  The Whois record for vinigay.com reflects that Defendant Paladeski was the registrant of vinigay.com, and the signatory to the Wild West Domains' agreement in this case.[15] (Docs. 1-2, Exh. 1 at 2-3; 32 at 1-2)

The Internet Corporation for Assigned Names and Numbers' ("ICANN") requires

---

[14] Plaintiff informed the Court at the hearing that paragraph 19 on page 8 of Wild West Domains' Terms of Use, doc. 24-6, Exh. 3 at 9, in which Defendant Paladeski consented to personal jurisdiction in Maricopa County, Arizona, is identical to the terms of use for GoDaddy discussed in *Productive People*. (Tr. 21-22)

[15] In 1998, ICANN, a private, non-profit corporation, "was formed to assume responsibilities for managing the allocation of Internet Protocol numbers and the domain name system." *Smith v. Network Solutions, Inc.*, 135 F.Supp.2d 1159, 1161 (N.D.Ala. 2001) (discussion of development of domain name registration). Today, "[a]ll domain names must be registered with an [ICANN] accredited registrar. This process allows domain names to be associated with specific locations on the Internet identified by an Internet Protocol [IP] address which consists of a series of numbers. Therefore, when someone enters a domain name such as [www.vinigay.com] into a Internet browser, the browser goes to a specified location on the Internet and nowhere else." *Io Group, Inc. v. Purser*, 2005 WL 1155255, * 1 (N.D.Cal. May 16, 2005). "[E]ach registrar is obligated under the ICANN Agreement to make its WHOIS database freely and publicly accessible, and all registrants are obligated under their agreements with registrars to allow registrars to do so." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 417 (2nd Cir. 2004) (citation omitted).

all domain name registrants to provide accurate Whois information.[16]  The domain name registrar in this case, Wild West Domains, similarly requires registrants to provide accurate and complete contact details. (Doc. 32, ¶ 2 at 5)

After filing this lawsuit, Plaintiff notified registrar Wild West Domains of this litigation and requested that Defendants' website be placed on lock down. Wild West Domains, in turn, notified the registrant of vinigay.com, after which Plaintiff's counsel, Marc J. Randazza, received an email from Defendant Vinicius Alves, stating that "We are responsible for the site Vinigay.com." (Doc. 6-1, Exh. 1 at 2)  While Defendant Alves' admission may establish his significant role in the piracy of Plaintiff's copyrighted videos as a "contributory infringer,"[17] liability must not be confused with the exercise of personal jurisdiction. *In re Western States Wholesale Natural Gas Litigation*, 605 F.Supp.2d 1118, 1141 (D.Nev. 2009) (Plaintiff's argument "[c]onfuses liability with personal jurisdiction. While [defendant] may be liable under Wisconsin antitrust law for its alleged illegal conduct, that does not automatically equate to Wisconsin having personal jurisdiction over  [defendant]."). Only Defendant Paladeski appears on the Whois record as the responsible party and is the sole signatory to the domain registration agreement with registrar, Wild West Domains. The Court rejects Plaintiff's arguments that the District

---

[16] For an explanation of the domain name registration process for Internet websites, *see Solid Host, NL v. Namecheap, Inc.*, 652 F.Supp.2d 1092, (C.D.Cal. 2009); *Bird v. Parsons*, 289 F.3d 865, 869 (6th Cir. 2002).

[17] A defendant may be contributorily liable for copyright infringement if such defendant knowingly induces, causes, or materially contributes to the infringing conduct of another. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); *Flava Works, Inc. v. Gunter*, 2011 WL 3205399, * 7 (N.D.Ill. July 27, 2011) (discussion of contributory infringer's liability in lawsuit for pirating copyrighted adult videos).

Court of Arizona also has personal jurisdiction over Alves simply because it has personal jurisdiction over Paladeski. Alves' admission; his email statements; his purported removal of Plaintiff's works from vinigay.com,[18] demonstrating Alves' control over the infringing website; and that Alves was presumptively authorized to negotiate a settlement[19] of this case on Defendants' behalf, albeit unsuccessfully, do not sufficiently establish that the District Court of Arizona has personal jurisdiction over Defendant Alves in this lawsuit.[20] (Doc. 32-1, Attachment A at 2-8)

When Defendant Paladeski registered the domain name vinigay.com with Wild West Domains, his agreement to Wild West Domains' forum selection clause conferred personal jurisdiction over him in the District Court of Arizona, Phoenix Division. *See*, *Chan*, *supra*.; *Productive People*, *supra*.  Wild West Domains' forum selection clause provides: "[Y]ou agree that any action relating to or arising out of these Terms of Use shall be brought in the state or federal courts of Maricopa County, Arizona, and you hereby consent to jurisdiction and venue in the state and federal courts of Maricopa County, Arizona, and you hereby consent to (and waive all defenses of lack of personal

---

[18] "An infringing third-party website can continue to reproduce, display, and distribute its infringing copies of [copyrighted] images after" a defendant has removed the pirated videos or other works from its website. *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1174 (9th Cir. 2007).

[19] See, doc. 24-1, ¶ 17 at 4.

[20] Plaintiff's assertion in its Post Hearing Memorandum that "[t]he act of registering the Vinigay.com domain name in Arizona, . . . makes the Vinigay.com domain name *and its operators* subject to jurisdiction in Arizona,. . . ." is made without citation to any legal authority and is rejected. (Doc. 32, ¶ 9 at 3) (emphasis added).

jurisdiction and forum non conveniens with respect to) jurisdiction and venue in the state and federal courts of Maricopa County, Arizona. . . ." (Doc. 24-6, Exh. 3, ¶ 19, at 9) Additionally, there is no evidence that Wild West Domains obtained Paladeski's accession to the forum clause by fraud or overreaching. *Carnival*, 499 U.S. at 595. Like the finding of personal jurisdiction in *Productive People*, 2009 WL 1749751, at * 1, Wild West Domains' forum selection clause confers personal jurisdiction in this District Court over Defendant Paladeski.

**E. Jurisdiction over Aliens**

Plaintiff also contends that the District Court of Arizona has personal jurisdiction over the individual Defendants because they are foreign nationals (both are residents of Brazil) and subject to jurisdiction in any district court, citing 28 U.S.C. 1391 ("An alien may be sued in any district."); Rule 4(k)(2), Fed.R.Civ.P.; *United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir. 1999); *World Tanker Carriers Corp. v. MV & YA Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996); *Nartron Corp. v. Quantum Research Grp. Ltd.*, 473 F. Supp. 2d 790, 797 (E.D. Mich 2007); *Sunshine Dist., Inc. v. The Sports Authority Michigan, Inc.*, 157 F. Supp. 2d 779, 788 (E.D. Mich. 2001). (Doc. 32, ¶¶ 11-14 at 3-4)

A district court may exercise personal jurisdiction over an alien-defendant if the requirements of Rule 4(k)(2), known as "the nationwide jurisdiction provision," are satisfied. *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). Also referred to as the federal long-arm statute, *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006), Rule 4(k)(2), Fed.R.Civ.P., provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> > (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> >
> > (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Rule 4(k)(2), Fed.R.Civ.P.  This Rule was adopted to remedy "a gap in federal personal jurisdiction law in situations where a defendant does not reside in the United States, and lacks contacts with a single state sufficient to justify personal jurisdiction, but has enough contacts with the United States as a whole to satisfy the due process requirements[.]" *Silver Ring Splint Co. v. Digisplint, Inc*., 508 F.Supp.2d 508, 513-14 (W.D.Va. 2007) (citing *Graduate Management Admission Council v. Raju*, 241 F.Supp.2d 589, 597 (E.D.Va. 2003)). As the Ninth Circuit explained in *Holland*, a district "court may exercise juris-diction when three requirements are met. First, the claim against the defendant must arise under federal law . . . Second, the defendant must not be subject to the personal juris-diction of any state court of general jurisdiction . . . Third, the federal court's exercise of personal jurisdiction must comport with due process." 485 F.3d at 461 (citing *Pebble Beach*, 453 F.3d at 1159 (finding no specific personal jurisdiction where defen-dant's actions lacked "individualized targeting" at the forum state).

The first two *Pebble Beach* factors necessary to assert personal jurisdiction over Defendant Alves are clearly established. Plaintiff's claims against Alves plainly arise under federal copyright laws and, as discussed earlier, Alves is not subject to the personal

jurisdiction of any state court of general jurisdiction.[21]  The third factor, whether the federal court's exercise of personal jurisdiction comports with due process, is where Plaintiff's contention that there is personal jurisdiction over Defendant Alves fails.

"The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [Defendants] and the forum state, we consider contacts with the nation as a whole." *Holland*, 485 F.3d at 462. Plaintiff argues that the following facts establish personal jurisdiction over Alves in Phoenix, Arizona and comports with constitutional due process:

> 19. Defendants chose to purposefully register their website with an Arizona business and consented to jurisdiction there. Additionally, the Vinigay site specifically mentions United States copyright law (acknowledging an awareness thereof) and attempts to mislead users into believing that Vinigay is either the owner, or has properly obtained licenses for the content it displays: "Content contained in Vinigay.com…[is] owned by or licensed by Vinigay.com and subject to copyright and other intellectual property rights in Brazil, the United States, Canada, and foreign laws and international conventions."

> 20. Defendants had extensive contacts with the United States, such that [Defendants] could not seriously argue that they lack minimum contacts with the forum nation, or that they could not reasonably anticipate being haled into court in the United States.

(Doc. 32, ¶ 19 at 4)  The Court disagrees.

_____

[21] Plaintiff asserts it does not bear the burden of proof to establish this second factor under Rule 4(k)(2), citing *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) ("If … the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)."); *see also*, *Steven Henry Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004). (Doc. 32, ¶ 16 at 4)

Notwithstanding Plaintiff's arguments, "[t]he Ninth Circuit has emphasized the fact that since Rule 4(k)(2) was enacted, that court has never had a case in which the facts have supported jurisdiction under the rule and the 'few cases' in which other circuits 'have concluded that Rule 4(k)(2) conferred jurisdiction have involved defendants with much more extensive contacts to this country.'" *Neuromechanical, LLC v. Kiro Kids Pty. Ltd.*, 2011 WL 333337, * 6 (D.Ariz. January 31, 2011) (quoting *Holland*, 485 F.3d at 462).

The Court need not repeat what it has already written and explained in this already too long report and recommendation. Plaintiff has not sufficiently demonstrated that the District of Arizona has either general or specific personal jurisdiction over Defendant Alves which would comport with constitutional due process. *Holland*, 485 F.3d at 461-62.

### F. Magistrate-judge Jurisdiction

On February 22, 2011, Plaintiff consented in writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (Doc. 9)  Despite Plaintiff's consent, a U.S. magistrate judge is not an Article III judge and does not have jurisdiction to enter a final judgment against a non-consenting, defaulted defendant. *United States v. Jenkins*, 734 F.2d 1322, 1325 n. 1 (9th Cir. 1983) ("It is well established that [] magistrate[ judges] are not Article III judges."); *Henry v. Tri-Services, Inc*., 33 F.3d 931, 932 (8th Cir. 1994) ("We hold that the magistrate judge lacked authority to enter final judgment because [the defaulted party] did not consent to have the matter tried to the magistrate judge."). While the Ninth Circuit has not expressly addressed whether a magistrate judge has the consti-

tutional authority to enter a default judgment, the Supreme Court has recently held that, because a U.S. bankruptcy judge is not an Article III judge under the Constitution, a bankruptcy judge "[l]ack[s] the constitutional authority to enter final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594, 2620 (2011). Accordingly, the undersigned Magistrate Judge proceeds by report and recommendation.

**III. Liability for Copyright Infringement**

A claim of copyright infringement under federal law requires proof that (1) the plaintiff owned a valid copyright in the work allegedly infringed, and (2) the defendant infringed the plaintiff's copyright by violating one of the exclusive rights that 17 U.S.C. § 106 bestows upon the copyright holder. *UMG Recordings, Inc. v. Disco Azteca Distribs., Inc.*, 446 F.Supp.2d 1164, 1171-72 (E.D.Cal. 2006) (citing *Marder v. Lopez*, 450 F.3d 445, 453 (9th Cir. 2006)); *see also*, *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 548 (1985)). One such exclusive right is the right to "distribute copies . . . of the copyrighted work to the public by sale." 17 U.S.C. § 106(3).[22] "Pursuant to Section 501(a) of the

---

[22] Section 106, entitled "Exclusive rights in copyrighted works," provides in relevant part:

> "Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (3) *to distribute copies . . . of the copyrighted work to the public by sale* or other transfer of ownership, or by rental, lease, or lending . . . ."

Title 17 U.S.C. § 106(3) (emphasis added).

Copyright Act, '[a]nyone who violates any of the exclusive rights of the copyright owner as provided by [17 U.S.C. § 106] . . . is an infringer of the copyright or right of the author.'" *ICG-Internet Commerce Group, Inc. v. Wolf*, 519 F.Supp.2d 1014, 1018 (D.Ariz. 2007) (quoting 17 U.S.C. § 501(b)). A copyright holder has the exclusive rights to reproduction of a copyrighted work and prepare derivative works based upon a copyrighted work. 17 U.S.C. § 106. A plaintiff is not required to demonstrate a defendant's intent to infringe the copyright in order to demonstrate copyright infringement. *Educational Testing Service v. Simon*, 95 F.Supp.2d 1081, 1087 (C.D.Cal. 1999) ("There is no need to prove anything about a defendant's mental state to establish copyright infringement; it is a strict liability tort."); *King Records, Inc. v. Bennett*, 438 F.Supp 2d 812 (M.D.Tenn. 2006) ("a general claim for copyright infringement is fundamentally one founded on strict liability.") (citation omitted).

Section 602(a) of the Copyright Act provides:

> Importation into the United States, without the authority of the owner of copyright under this title, of copies . . . of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies of phonorecords under section 106, actionable under section 501.

Title 17 U.S.C. § 602(a).

**Plaintiff's Copyright Infringement Allegations**

Plaintiff's Amended Complaint alleges four causes of action against each defendant: 1) copyright infringement,  2) contributory copyright infringement, 3) vicarious copyright infringement, and 4) inducement of copyright infringement. (Doc. 6)

Plaintiff sufficiently alleges the *prima facie* components of a valid copyright infringement claim. First, Plaintiff has alleged that it owns valid, registered copyrights to the

subject videos marketed on its website, and "created the works using highly talented performers, directors, cinematographers, lighting technicians, set designers, and editors[,]" which include the "3 copies of its copyrighted material illegally shared on Defendant's website." (Docs. 6, ¶¶ 11, 29, 34, 40-41, 46-47, 50-51; 1-7, Exh. 6 at 2)   Second, Plaintiff has alleged that Defendants, without its authorization, accessed its website and "reproduced, publicly displayed, and distributed through the Vinigay.com website at least 3 unauthorized video files copyrighted by and belonging to Plaintiff. Vinigay.com's customers viewed the illegally and improperly obtained intellectual property, and downloaded the property, thus making more copies thereof." (*Id*., ¶¶ 37, 40, 52, 80)

Generally, a copyright owner is entitled to the remedies of injunctive relief, monetary damages, attorney's fees,  and costs when a copyright is infringed. 17 U.S.C. §§ 502, 504, 505. Title 17 U.S.C. § 504(a) permits the aggrieved party to recover either (1) the copyright owner's actual damages and any additional profits of the infringer, or (2) statutory damages. Section 504(c)(1) states, in pertinent part, that "the copyright owner may elect, at any time before final judgment, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually . . . in a sum not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009). "Actual damages are usually determined by the loss in the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer." *Polar Bear Prods., Inc. v. Timex Corp*., 384 F.3d 700, 708 (9th Cir. 2004) (citation omitted). "Under § 504(b), actual damages must be suffered 'as a result of the infringement,' and recoverable profits must be

1     'attributable to the infringement.'" *Id.*

2         Plaintiff's Amended Complaint requests, *inter alia*, the following relief: (1) a

3     permanent injunction "[a]gainst all Defendants, their agents, representatives, servants,

4     employees, attorneys, successors and assigns, and all others in acting in concert or

5     participation with them, and further to enjoin and restrain all Defendants and others from

6     copying, posting or making any other infringing use or infringing distribution of Plaintiff's

7     audiovisual works, photographs or other materials[];" (2) "[P]laintiff Liberty's [actual]

8     damages and Defendants' profits or alternatively statutory damages pursuant to 15 U.S.C.

9     §1117;" (3) the entry of "an order enjoining Defendants Vinigay.com and Frank (sic) from

10    disposition of any domain names registered to them, or other property, until full and final

11    settlement of any and all money damage judgments;" (4) the entry of "an order directing the

12    Defendants pay Plaintiff Liberty both the costs of action and the reasonable attorney's fees

13    incurred by [Plaintiff] in prosecuting this action pursuant to 17 U.S.C. § 504 and 15 U.S.C.

14    § 1117;" and (5) an order that "Defendants pay pre- and post-judgment interest at the highest

15    legal rate[.]" (Doc. 6 at 12-13)

16  **IV.  Damages**

17        **A. Monetary Damages**

18        In its default damages memorandum, and by the testimony of Mr. Leonard, a certified

19    public accountant, at the default damages hearing, tr. at 22-29, 33, and his verified

20    declaration, doc. 24-3, at 1-3, Plaintiff requested the entry of judgment in the amount of

21    $990,440.40, which Plaintiff calculated as follows.

22        Plaintiff's one-time, non-recurring monthly fee to join the CorbinFisher.com website

23    is $39.95.  (Docs. 24-1; 33, tr. at 27)  Two of the three videos pirated by Defendants were

24    viewed 24,792 times. (Doc. 24-3, ¶ 4 at 2[23]) If each of these views was made on

25    _____

26        [23] Mr. Leonard acknowledged that he was unable to determine how many people
      viewed "Dave Fucks Dawson" on Defendants' website. If he assumed that the number of
27    viewings was within the realm of Plaintiff's other two videos, Plaintiff "lost approximately
      $1.5 million from these three infringements." (Doc. 24-3, ¶ 5 at 2)
28

CorbinFisher.com, instead of vinigay.com, Plaintiff would have obtained 24,792 more one-month memberships. Plaintiff calculated its minimum actual damages by multiplying 24,792 by $39.95 to establish actual damages of $990,440.40.  Mr. Leonard described this damage amount as "a very low conservative figure" because it assumes these hypothetical purchasers of a membership would not have purchased a longer membership for a higher fee, these purchasers would not have made any referrals to others who would have purchased a membership, and it includes only two of the three stolen works.[24] (Tr. at 27-29) Plaintiff makes additional assumptions to determine its actual damages of $990,440.40. First, Plaintiff assumes that each viewing was by a separate individual and not the same viewer watching the videos multiple times. Second, Plaintiff assumes that those who watched the videos for free were willing to pay $39.95 for videos instead of looking for other free sites. Further, Plaintiff did not assume that any, or all, of those viewers would buy the more expensive membership subscriptions.

While Plaintiff's actual infringement damages are difficult to determine with exact precision, the Court finds that $990,440.40 is a reasonable and appropriate amount for Plaintiff's actual damages. "[D]oubts about the actual assessment of damages [awarded at a default hearing] will be resolved against the party who frustrates proof of such, and the factfinder may calculate damages at the highest reasonably ascertainable value." *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D.Cal. 1997) (citation omitted).

The Court notes that federal law authorizes a district court to grant a plaintiff any or all of a defendant's profits. 17 U.S.C. § 504(b)  In order to find profits, the copyright owner is required to "[p]resent proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.* Here, the amount of Plaintiff's requested actual

---

[24] Plaintiff concedes it could not determine the number of viewings for the third video.

damages, $990,440.40, is reasonable and appropriate because Defendants did not participate in this litigation, denying Plaintiff an opportunity to engage in discovery. Therefore, none of Defendants' profits could be calculated as part of Plaintiff's damages in seeking a default judgment.

Alternatively, Plaintiff requests the entry of a judgment for statutory damages in the amount of $450,000.00. (Doc. 24-1, ¶¶ 43-44)  Because actual damages are often hard to prove, "[a] copyright owner may elect instead to recover statutory damages." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991) (citing 17 U.S.C. § 504(c)); *Apple Inc. v. Psystar Corp.*, 673 F.Supp.2d 926, 928 (N.D.Cal. 2009). (Doc. 24-1, ¶ 47)  The amount can be between $750.00 and $30,000.00, but for a willful infringement, the damages may go as high as $150,000.00 per work.  17 U.S.C. § 504(c)(2); *ICG-Internet Commerce Group, Inc. v. Wolf*, 519 F.Supp.2d 1014, 1019 (D.Ariz. 2007) ("Where the copyright owner proves that the infringement was willful, a court, in its discretion may increase the award to an amount up to $150,000."). The Ninth Circuit has held that "'[w]illful' means with knowledge that the defendant's conduct constitutes infringement." *Wolf*, 519 F.Supp.2d at 1020 (citing *Peer Int'l Corp. v. Pausa Records, Inc*., 909 F.2d 1332 (9th Cir. 1990); Nimmer on Copyright § 14.04 (2007)).

Plaintiff seeks the highest possible statutory damages, arguing that, "[i]t is appropriate that the Court use opportunities such as this to send a message of deterrence to would be infringers that, 'it costs less to obey the copyright laws than to disobey them.'" *Int'l Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 659 (D.N. Ill. 1987). (Doc. 24-1, ¶ 65 at 9)  Further, Plaintiff argues, the statutory rule is not only for "restitution of profit and reparation for injury but also is designed to discourage wrongful conduct." *F.W. Woolworth Co. v. Contemporary Arts, Inc*., 344 U.S. 228, 233 (1952). (Doc. 24-1, ¶ 65 at 13) Plaintiff multiplies the statutory damages maximum of $150,000.00 by three, for the number of videos pirated, to arrive at its claimed statutory damages of $450,000.00. (*Id*., ¶ 67 at 13) Defendants' recognition on its website's Terms of Use that Plaintiff's works are "subject to copyright and other intellectual property rights in . . . the United States, . . . without the prior

written consent of their respective owners[]" demonstrates actual knowledge that Defendants' conduct constituted infringement of Plaintiff's copyrighted works and justifies a finding of wilful infringement. (Doc. 34-1 at 2) *See*, *UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*, 446 F.Supp.2d 1164, 1173 (E.D.Cal. 2006) ("A plaintiff sustains its burden of proving willfulness 'by showing [the] defendant knew or should have known it infringed [the plaintiff's] copyrights . . . Willful does not mean malicious, rather, it means with knowledge, whether actual or constructive. . . Alternatively, willfulness is shown where 'the defendant recklessly disregarded the possibility that its conduct represented infringement.'") (citations omitted).

**B. Injunctive Relief**

**1. Injunction**

Under the Copyright Act, a district court is authorized to grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain" further infringement of a copyright.[25] 17 U.S.C. 502(a); *Broadcast Music, Inc. v. TLM Investments, P.L.C.*, 2010 WL 2891524, * 8 (D.Ariz. July 21, 2010). Injunctive relief, however, does not automatically issue upon a finding of liability. Rather, a plaintiff must show entitlement to a permanent injunction by demonstrating: (1) that plaintiff has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a

---

[25] Plaintiff's Amended Complaint alleges "[D]efendant Vinigay.com did not have a registered [Digital Millennium Copyright Act ("DMCA")] Agent, required by 17 U.S.C. § 512(c)(2), to qualify for the DMCA safe harbor provisions." (Doc. 6, ¶ 30 at 5) "The DMCA established certain safe harbors to 'provide protection from liability for: (1) transitory digital network communications; (2) system caching; (3) information residing on systems or networks at the direction of users; and (4) information location tools.'" *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076-77 (9th Cir. 2004) (citing 17 U.S.C. §§ 512(a)-(d)) (footnotes omitted). "These safe harbors limit liability but 'do not affect the question of ultimate liability under the various doctrines of direct, vicarious, and contributory liability . . . .'" *Id.* (citations omitted).

1  permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (holding

2  that "the traditional four-factor framework that governs the award of injunctive relief "

3  applies to "disputes arising under the Patent Act."); *Perfect 10, Inc. v. Google, Inc*., 653 F.3d

4  976, 980-81 (9th Cir. 2011) (concluding after *eBay* "that the propriety of injunctive relief in

5  cases arising under the Copyright Act must be evaluated on a case-by-case basis in accord

6  with traditional equitable principles and without the aid of presumptions or a 'humb on the

7  scale' in favor of issuing such relief.").

8      "[F]ederal law provides the district court the discretion to 'grant temporary and final

9  injunctions on such terms as it may deem reasonable to prevent or restrain infringement of

10  a copyright.'" *Apple Inc. v. Psystar Corp*., 658 F.3d 1150, 11 (9th Cir. 2011) (quoting 17

11  U.S.C. 502(a)). In determining the scope of injunctive relief, a district court has broad

12  latitude, must balance the equities between the parties, and give due regard to the public

13  interest. *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 842-43 (9th Cir. 2007); *High Sierra*

14  *Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641 (9th Cir. 2004) (citations omitted).

15      Initially, district courts must ascertain whether remedies available at law, such as,

16  monetary damages, are inadequate to compensate for the injury suffered. *eBay*, 547 U.S. at

17  391. First, whether Defendants, purportedly Brazilian college students, will pay, or have the

18  ability to pay, monetary damages to Plaintiff is highly unlikely. Second, the evidence

19  demonstrates irreparable harm to Plaintiff and supports the conclusion that an award of

20  damages would be inadequate because the harm caused to Plaintiff's reputation, goodwill,

21  and brand is difficult, if not impossible, to quantify. Third, monetary damages would not

22  prevent Defendants from continuing to infringe Plaintiff's copyrighted works through other

23  websites in the future, and will not prevent third-parties using those websites for further

24  infringement of Plaintiff's copyrighted works.

25      In determining whether injunctive relief is appropriate, "courts must balance the

26  competing claims of injury and must consider the effect on each party of the granting or

27  withholding of the requested relief." *Klein v. City of San Clemente*, 584 F.3d 1196,

28  1199-1200 (9th Cir. 2009) (internal citation omitted). Here, a permanent injunction in favor

of Plaintiff would serve the narrow purpose of "prevent[ing] or restrain[ing]" further infringement of Plaintiff's copyrighted works. 17 U.S.C. 502(a). Moreover, because Defendants cannot genuinely claim any legitimate hardship as a result of being enjoined from committing their unlawful activities, and Plaintiff would suffer irreparable and immeasurable harm if an injunction were not issued, this factor weighs strongly in favor of granting Plaintiff's request for injunctive relief. Moreover, the imposition of reasonably tailored equitable relief would serve the public interest, because it would be consistent with the policies underlying copyright protection by preventing or discouraging copyright thieves from committing illegal and criminal[26] acts under the Copyright Act. *eBay*, 547 U.S. at 391.

The Court concludes that a permanent injunction is consistent with traditional principles of equity, and after considering the four *eBay* factors to reach that determination, the Court finds that the recommended injunction is both equitable and reasonable to prevent or restrain further infringement of Plaintiff's copyrighted works under 17 U.S.C. 502(a).

### 2. Impoundment

The Ninth Circuit has held that domain names are property. *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003). "[L]ike other forms of property, domain names are valued, bought and sold, often for millions of dollars[.]" *Id.* "Registering a domain name is like staking a claim to a plot of land at the title office." *Id.*

Under copyright laws, a copyright owner may seek to impound infringing material. 17 U.S.C. § 503.[27] Plaintiff argues that because a domain name is a tangible asset, it is proper

---

[26] Title 17 U.S.C. § 506(a) provides in part that "[a]ny person who willfully infringes a copyright shall be punished . . . for purposes of commercial advantage or private financial . . . shall be imprisoned not more than 5 years, or fined in the amount set forth in this title, or both . . . ." 17 U.S.C. §§ 506(a)(1)(A), 2319.

[27] Section 503(a)(1) of the Copyright Act of 1976, states in pertinent part:

At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable--
   (A) of all copies or phonorecords claimed to have been made or used in violation

to impound Defendants' domain name until Plaintiff's damages are paid in full or that "[i]njunctive relief requir[e] the permanent disablement of the vinigay.com domain name." (Doc. 24-1, ¶ 79(d)) Because Plaintiff failed to specifically request impoundment of Defendants' domain name in its prayer for relief and provide any authority under the Copyright Act that such relief is lawful, the Court will recommend this request be denied. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *United States v. Fong*, 300 F.2d 400, 413  (9th Cir. 1962) ("[t]he mandate of the Rule [54(c)] is very simple, clear and decisive that a judgment 'shall not be different in kind from or exceed in amount that prayed for in the demand for judgment' in default cases.") (citation omitted); *Silge v. Merz*, 510 F.3d 157, 159-162 (2nd Cir. 2007) (for example, prejudgment interest may be awarded by default judgment only if demanded in the complaint. A boilerplate demand "for such other and further relief which the Court deems just" is not an adequate demand for prejudgment interest.).

### C. Attorney's Fees and Costs

In a copyright infringement action, the district court, in its discretion, may award the prevailing party its reasonable attorney's fees and costs. 15 U.S.C. §§ 505, 1117(a); *Microsoft Corp. v. Evans*, 2007 WL 3034661, 15 (E.D.Cal. October 17, 2007). Under 17 U.S.C. § 505, "[a]ttorney's fees are to be awarded to prevailing parties in the court's discretion after consideration [of] various factors, including but not limited to frivolousness, motivation, objective unreasonableness (both as to legal and factual components of the case), culpability, the degree of success obtained, the strength of the case relative to the costs of the litigation, the pecuniary circumstances of the parties, and the need in the particular circumstances of the case to advance considerations of compensation and deterrence; the

---

of the exclusive right of the copyright owner;
(B) all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced; . . . .

17 U.S.C. § 503(a)(1)(A), (B).

1  award should further the underlying purposes of the Copyright Act. *Id.* (citing *Fogerty v.*
2  *Fantasy, Inc.*, 510 U.S. 517, 535 n. 19 (1994)); *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 557-60
3  (9th Cir. 1996).

4           Under federal law, district courts ordinarily determine a reasonable award by starting
5  with the lodestar amount. *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992); *Morales*
6  *v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). First, the lodestar amount is
7  calculated by multiplying the number of hours reasonably expended on litigation by a
8  reasonable hourly fee. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Morales*, 96 F.3d at
9  363. Second, the district court may adjust the lodestar upward or downward based on facts
10 not subsumed in the initial lodestar calculation. *Van Gerwen v. Guarantee Mut. Life Co.*, 214
11 F.3d 1041, 1045 (9th Cir. 2000). The amount of reasonable attorneys' fees is "committed to
12 the sound discretion of a trial judge." *Perdue v. Kenny A. ex rel. Winn*, ___ U.S. ___, ___,
13 130 S.Ct. 1662, 1675, 176 L.Ed.2d 494 (2010); *see also*, *Fogerty*, 510 U.S. at 534
14 ("[C]ongress has modified the American Rule to allow an award of attorney's fees in the
15 court's discretion . . . .").

16          Plaintiff's attorney's fees are listed in Plaintiff's Affidavit for Award of Attorney's
17 Fees and Costs, doc. 27, and were discussed by Mr. Gapp at the hearing, tr. at 9-10.  There
18 was a $350 initial filing fee with the Court.  (Doc. 27)  Plaintiff's attorney lives in Las Vegas,
19 Nevada, and spent $455.50 on air travel expenses to attend the default damages hearing. *Id.*
20 Plaintiff's total costs are $805.50. *Id.*  Further, Plaintiff's attorney charges $450 per hour for
21 his time and $150 per hour for his paralegal's time. *Id.*  Prior to his travel and attendance at
22 the hearing, Plaintiff's attorney spent 17.5 hours working on the case, and anticipated
23 spending another 5 hours related to the hearing, for a total of 22.5, hours which does not
24 include fees incurred after the default damages hearing. *Id.*  Plaintiff's paralegal spent 33.4
25 hours working on this case. *Id.*  Plaintiff's total attorney's and paralegal's fees amount to
26 $15,135.00.  When added to its costs and travel expenses of $805.50, Plaintiff's total fees and
27 costs amount to $15,940.50. After consideration of all the *Fogerty* factors, Court will
28 recommend Plaintiff be awarded its fees and costs because Plaintiff is the prevailing party

1   and its fees and costs are reasonable and appropriate. *Fogerty*, 510 U.S. at 535 n. 19.

2   **D. Prejudgment Interest**

3   Plaintiff also requests an award of prejudgment interest on its actual or statutory

4   damages. (Doc. 6, ¶ 9 at ) "'Prejudgment interest is available under the Copyright Act' in the

5   discretion of the district court." *Brighton Collectibles, Inc. v. Coldwater Creek Inc*., 2009

6   WL 160235 (S.D.Cal. January 20, 2009) (*Polar Bear Productions, Inc. v. Timex Corp*., 384

7   F.3d 700, 716 & n. 12 (9th Cir. 2004)). The Court exercises its discretion to recommend the

8   denial of an award of prejudgment interest, as the Court finds that an award of Plaintiff's

9   actual or statutory damages adequately compensates Plaintiff for its damages in this case.

10  **V. Default Judgments**

11  Following the entry of default, Rule 55(b)(2), Fed.R.Civ.P., permits a district

12  court to enter final judgment in a case.  Entry of default judgment, however, is not a matter

13  of right. "Its entry is entirely within the court's discretion and may be refused where the court

14  determines no justifiable claim has been alleged or that a default judgment is inappropriate

15  for other reasons." *Eason v. Indymac Bank, FSB*, 2010 WL 1962309, * 1 (D.Ariz., May 14,

16  2010) (citing *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986); *Aldabe v. Aldabe*, 616

17  F.2d 1089, 1092 (9th Cir. 1980)). "[A]ll well-pleaded facts in the complaint are taken as true,

18  except those relating to damages." *Black & Decker (U.S.), Inc. v. All Spares, Inc*., 2010 WL

19  3034887, * 2 (D.Ariz. Aug. 3, 2010) (citing *TeleVideo Sys.*, 826 F.2d at 917); *Geddes v.*

20  *United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

21  In determining damages, a district court may rely on an evidentiary hearing or the

22  declarations submitted by the plaintiff, Fed. R. Civ. P. 55(b)(2), and "can award only up to

23  the amount prayed for by a plaintiff in its complaint." *Black & Decker*, 2010 WL 3034887

24  at 3 (citing *Truong Giang Corp. v. Twinstar Tea Corp*., 2007 WL 1545173, * 13 (N.D.Cal.

25  May 29, 2007)). Moreover, the amount of relief permitted is statutorily kept from

26  "exceed[ing] in amount, what is demanded in the pleadings." Fed.R.Civ.P. 54(c)  "Entry of

27  default judgment is not mandatory upon Plaintiff's request, and the court has discretion to

28  require some proof of the facts that must be established in order to determine liability."

1     *Martino v. Chapman*, 2008 WL 110948, * 1 (D.Ariz. Jan. 8, 2008) (quoting *Apple Computer*

2     *Inc. v. Micro Team*, 2000 WL 1897354, * 3 n. 5 (N.D.Cal. December 21, 2000) (citing 10A

3     Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2688 (3rd ed.

4     1998)).

5         The Ninth Circuit has enumerated seven factors for a district court to consider in

6     determining whether to grant a default judgment: (1) the merits of the plaintiff's substantive

7     claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action; (4)

8     the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material

9     facts; (6) whether the default was due to excusable neglect; and (7) the strong policy

10    underlying the Federal Rules of Civil Procedure favoring a decision on the merits. *Eitel v.*

11    *McCool*, 782 F.2d 1470 (9th Cir. 1986); *Truong Giany Corp. v. Twinstar Tea Corp.*, 2007

12    WL 1545173 (N.D. Cal. May 29, 2007).  After considering all the *Eitel* factors and Plaintiff's

13    discussions of them, the undersigned Magistrate Judge concludes that they weigh strongly

14    in favor of entering the default judgment recommended herein. (Docs. 24-1, ¶¶ 70-77, at 14-

15    16; 40, ¶¶ 49-56 at 10-11)  *See*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039,

16    1055-1061 (N.D.Cal. 2010) for discussion of *Eitel* factors in magistrate judge's report and

17    recommendation that default judgement be entered in copyright infringement case.

18   **VI. Findings of Fact**

19        1.  Defendant Gustavo Paladeski signed a forum selection clause when registering

20    Defendants' domain name with Wild West Domains.  (Doc. 24-6 at 9).

21        2.  Defendants website, vinigay.com, is a "tube site," which republishes copyrighted

22    videos from other websites, such as Plaintiff's, often without a copyright owner's permission.

23    (Doc. 24-1 at 5).

24        3.  While Defendants do not charge subscription fees for their site, they earn a profit

25    through advertisements, both in the form of banners on the website and video ads that are

26    embedded into the free videos.  (Doc. 6)

27        4. Defendants also profit by posting links to megaporn.com. *Id.*  Megaporn.com is a

28    pay site; for every person that joins the site after being referred by Vinigay.com, Defendants

1    earn a commission. *Id.*

2        5.  Plaintiff's attorney asserted in the default damages hearing that he wrote the terms
3    of use for subscriptions to Corbin Fisher, and they include copyrighted terms.

4        6.  Plaintiff's terms of use are viewed when a subscription is purchased, before the
5    customer is granted access to the videos. *Id.*  While there is a "free tour" portion of the
6    website that displays "G-Rated photographs," the only way to view Corbin Fisher's
7    copyrighted videos is by purchasing a subscription. (*Id.*)

8        7.  As explained at the default damages hearing by Plaintiff's CEO, Mr. Gapp, to
9    pirate a video from the Corbin Fisher website, one must buy a subscription and download the
10   video off the Corbin Fisher website.

11       8.  By logging onto CorbinFisher.com, one agrees to Plaintiff's terms of use going
12   forward. Thus, in order to obtain Plaintiff's three copyrighted videos, Defendants had no
13   choice but to agree to Plaintiff's terms of use.

14       9.  Defendants "pirated" Plaintiff's three copyrighted videos from Plaintiff's website,
15   CorbinFisher.com, publishing them on their own website, vinigay.com.  (Doc. 6)

16       10.  Defendants knew they were violating Plaintiff's three copyrighted videos they
17   pirated.

18       11.  Each pirated video has its own copyright.  (Doc. 24-10)

19       12.  Once Defendants found out about the this lawsuit, Defendant Alves contacted
20   Plaintiff's counsel to conduct settlement discussions. (Doc. 24-1)  When no agreement was
21   reached, Defendants ended all communications to Plaintiff's representatives and have not
22   participated in this action.  (Doc. 24-1)

23       13.  While no viewing numbers could be determined for the third video, the first two
24   pirated videos were viewed 24,792 times on vinigay.com. (*Id.*)  As explained by Mr. Leonard
25   at the default damages hearing, this number was found on the vinigay.com website. On the
26   page of each of the two videos, there was a statistic for how many views it had.

27       14. Plaintiff claims it is one of the top companies in the field of adult-entertainment,
28   obtaining numerous awards for its products. *Id.*

15. As explained by Mr. Leonard at the default damages hearing, when viewed on vinigay.com, the videos are broadcast at a lower quality than on CorbinFisher.com, therefore, causing harm to Plaintiff's reputation in the industry.

16. As a result of the three videos being viewed on vinigay.com, Plaintiff lost potential customers of monthly subscriptions and DVDs.

17. Plaintiff charges $39.95 for a one-month subscription. (Doc. 24-1)

18. Defendants never received permission from, nor paid fees to, Plaintiff for the viewing, use, or distribution of Plaintiff's three copyrighted videos.

19. Defendants were properly served with a summons and complaint by email in this matter. (Docs. 15-17)

20. Defendants have actual knowledge of this lawsuit. (Docs. 6-1; 24-7; 24-8)

21. The Clerk of Court entered default against Defendants. (Doc. 10)

**VII.  Findings of Law**

1. Plaintiff lawfully effectuated service of process on Defendants.

2. Defendant Gustavo Paladeski voluntarily signed Wild West Domain's forum selection clause, consenting to personal jurisdiction in Maricopa County, Arizona, where the District Court of Arizona, Phoenix Division, is located.

3. The District Court of Arizona has subject-matter jurisdiction over this copyright infringement action and venue is appropriate.

4. Plaintiff expressly consented in writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c).

5. The undersigned Magistrate Judge has authority to recommend a non-final and independent determination of fact and law that default judgment be entered against Defendant Gustavo Paladeski without his consent.

6. Plaintiff is eligible for either statutory or actual damages. 17 U.S.C. § 504(a).

7. Statutory damages could be as high as $150,000 per copyright infringement. 17 U.S.C. § 504(c)(2).

8. Defendants unlawfully infringed on three separate copyrighted works owned by

Plaintiff.

9.  Defendants knowingly and willfully infringed on Plaintiff's three copyrighted videos.

10. Plaintiff would be prejudiced by an unfavorable decision.

11. It is appropriate to award Plaintiff its actual damages reasonably proven in this matter.

12. Plaintiff is entitled to an award of $990,440.40 in actual damages plus Plaintiff's taxable costs allowed by Rule 54(d)(1), LRCiv 54.1, and 28 U.S.C. § 1920.

13. It is appropriate to award Plaintiff its attorney's fees, costs and travel expenses in this matter.

14.  Plaintiff is entitled to an award of $15,940.50 in fees, costs and travel expenses.

15.  The District Court may properly enter a permanent injunction in favor of Plaintiff Liberty Media Holdings, LLC against Defendant Paladeski, his agents, representatives, servants, employees, attorneys, successors and assigns, and all others in acting in concert or participation with him, enjoining and restraining them from copying, posting or making any other infringing use or infringing distribution of Plaintiff's audiovisual works, photographs or other materials.

16.  Plaintiff is entitled to an order of impoundment, impounding all infringing copies of Plaintiff's copyrighted works, which are in Defendant Paladeski's possession or under his control until the judgment is paid in full.

17. Plaintiff is not entitled to an order enjoining Defendants from disposition of vinigay.com, or any other domain names registered to them, until the judgment is paid in full.

18.  The District Court of Arizona does not have either general or specific personal jurisdiction over Defendant Alves which comports with constitutional due process.

19.  Because Defendant vinigay.com is not a jural entity, judgment against vinigay.com is not appropriate.

20. Defendants' infringement is not wholly extraterritorial to the United States.

## VIII.  Conclusion

Based on the above facts, authorities, and analysis, the undersigned **RECOMMENDS** that the District Court of Arizona **GRANT** in part and **DENY** in part Plaintiff's Application for Entry of Default Judgment, doc. 24, as follows:

1. Plaintiff's Application for Entry of Default Judgment, against Defendant Gustavo Paladeski be **GRANTED**;

2. Plaintiff's Motions for Award of Attorneys' Fees and Costs *etc*, docs. 6, 24-1, 27, be **GRANTED** and Plaintiff be awarded its fees, costs and travel expenses in the amount of $15,940.50.

3. Judgment be entered in favor of Plaintiff Liberty Media Holdings, LLC and against Defendant Gustavo Paladeski in the amount of $990,440.40, plus Plaintiff's taxable costs allowed by Rule 54(d)(1), LRCiv 54.1, and 28 U.S.C. § 1920. *See*, *In re Apollo Group, Inc. Securities Litigation*, 2009 WL 2169178 (D.Ariz. July 17, 2009). The Judgment shall earn interest at the annual federal rate from the date of entry of this Judgment until paid in full.

4. A permanent injunction be entered in favor of Plaintiff Liberty Media Holdings, LLC against Defendant Gustavo Paladeski, his agents, representatives, servants, employees, attorneys, successors and assigns, and all others in acting in concert or participation with him, enjoining and restraining them from copying, posting or making any other infringing use or infringing distribution of Plaintiff's audiovisual works, photographs or other materials;

5. An order of impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) be entered, impounding all infringing copies of Plaintiff's copyrighted works, which are in Defendant Paladeski's possession or under his control until the judgment entered herein is paid in full; and

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for the following requested relief be **DENIED**:

1. An order impounding Defendants' domain name (vinigay.com); and

2. An award of pre-judgment interest.

**IT IS ORDERED** that if this Report and Recommendation is approved by Senior United States District Judge McNamee or unless he otherwise directs, the Clerk is kindly

1    directed to enter judgment pursuant to Rule 58(a), (b)(2), Fed.R.Civ.P.

2          This recommendation is not an order that is immediately appealable to the Ninth

3 Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

4 Appellate Procedure, should not be filed until entry of the District Court's judgment. The

5 parties shall have 14 days from the date of service of a copy of this recommendation within

6 which to file specific written objections with the Court. 28 U.S.C. § 636(b)(1), as amended

7 on December 1, 2009; Rules 72 and 6, Federal Rules of Civil Procedure, as amended on

8 December 1, 2009. Thereafter, the parties have fourteen (14) days within which to file a

9 response to the objections. Rule 72(b)(2), Fed.R.Civ.P. Failure to file timely objections to

10 this Magistrate Judge's Report and Recommendation may result in the acceptance of the

11 Report and Recommendation by the District Judge without further review. *United States v.*

12 *Reyna- Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any

13 factual determinations of this Magistrate Judge will be considered a waiver of a party's right

14 to appellate review of the findings of fact in an order or judgment entered pursuant to this

15 Magistrate Judge's recommendations. Rule 72, Federal Rules of Civil Procedure.

16          Dated this 27th day of December, 2011.

17

18

19                         Lawrence O. Anderson
                        United States Magistrate Judge

20

21

22

23

24

25

26

27

28